### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-418 (RDM) |
| ERIC BOCHENE, | |
| *Defendant.* | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to Federal Rule of Criminal Procedure 21 and the due process clause of the U.S. Constitution, Defendant Eric Bochene moves to transfer this case to the United States District Court for the Northern District of New York.  Dkt. 24.  For the reasons that follow, the Court will **DENY** Defendant's motion.

### I.  BACKGROUND

This is a Class A and Class B misdemeanor case arising from the events at the United States Capitol on January 6, 2021.  The superseding information charges Eric Bochene with four counts: (1) entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); (3) violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  Dkt. 12 at 1–2.

At Defendant's initial appearance, this Court granted his oral motion to appoint counsel. *See* Min. Entry (May 25, 2021).  Defendant later moved to represent himself and to terminate his counsel, *see* Min. Entry (Aug. 25, 2021), prompting the Court to hold a *Faretta* hearing to

1

evaluate that request, *see Faretta v. California*, 422 U.S. 806, 835 (1975) (requiring that, "in order to represent himself, the accused must knowingly and intelligently forgo" the assistance of counsel (quotation marks omitted)).  After conducting an extensive inquiry and cautioning Defendant about the risks associated with representing himself, the Court found that Defendant's request was made knowingly and intelligently and so granted his motion.  *See* Min. Entry (Sept. 2, 2021).  His former counsel has, however, remained in the case as stand-by counsel.  *Id.*

Defendant, now representing himself, has moved to transfer this case from the District of Columbia to the Northern District of New York, where he resides, on the grounds that (1) "[i]n the present social climate" trying his case before "a jury procured from Washington[,] DC[,] would impair [his] constitutionally protected right to a fair trial;" and (2) requiring that he travel to the District of Columbia for trial would inflict unnecessary burdens on him. Dkt. 24 at 2.  The government filed its brief in opposition on November 12, 2021, Dkt. 25, and Defendant's reply brief was docketed on December 10, 2021, Dkt. 28.  The motion is now ripe for decision.

## II. ANALYSIS

The Sixth Amendment guarantees criminal defendants the right to a trial "by an impartial jury of the State and district wherein the crime [was allegedly] committed," U.S. Const. amend. VI, and Article III specifies that "such Trial shall be held in the State where the said Crimes [were allegedly] committed," U.S. Const. art. III, § 2, cl. 3; *see also id.* ("[W]hen not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.").  "The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial." *Skilling v. United States*, 561 U.S. 358, 378 (2010).  "Venue transfer in federal court is governed by Federal Rule of Criminal Procedure 21," *id.* at 378 n.11, which

authorizes transfer (upon the defendant's motion) for two reasons: prejudice or inconvenience, *see* Fed. R. Crim. P. 21.  Defendant has not made the necessary showing to justify transfer for either reason, particularly at this early stage.

## A.    Rule 21(a)

When necessary to avoid undue prejudice, transfer is mandatory under both Rule 21(a) and the due process clause.  Under the plain terms of Rule 21(a), the Court "*must* transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  Fed. R. Crim P. 21(a) (emphasis added).  As a result, if a court "finds an unacceptable level of prejudice [in the transferring district], such as where pervasive pretrial publicity has inflamed passions in the host community past the breaking point," it must transfer the case.  *United States v. Peake*, 804 F.3d 81, 90 (1st Cir. 2015) (quotation marks omitted).

Identifying and eliminating potential juror partiality and prejudice is, of course, one of the core aims of the jury selection process.  The questions asked during *voir dire*, in particular, are designed to "safeguard[] litigants' right to a fair and impartial trial" and "to make sure jurors do not harbor biases for or against the parties."  *Faria v. Harleysville Worcester Ins. Co.*, 852 F.3d 87, 95 (1st Cir. 2017).  A defendant claiming jury bias—and, by extension, a defendant claiming *potential* jury bias—must demonstrate such bias "not as a matter of speculation but as a demonstrable reality."  *United States v. Haldeman*, 559 F.2d 31, 60 (D.C. Cir. 1976) (en banc) (per curiam) (quoting *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462 (1956)).  As a result, it is the "well established procedure" in this circuit to "refus[e] [defendants'] pre-*voir dire* requests for . . . a change of venue."  *Id.* at 64; *see also United States v. Yousef*, 327 F.3d 56, 155

(2d Cir. 2003) ("[T]he key to determining the appropriateness of a change of venue is a searching voir dire of the members of the jury pool."); *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991) ("Only where *voir dire* reveals that an impartial jury cannot be impaneled would a change of venue be justified.").  It is only in "extreme circumstances" that the Court may presume prejudice even before *voir dire*.  *Haldeman*, 559 F.2d at 60.  Such circumstances might arise, for example, where "the population of Washington, D.C. [is] so aroused against [the defendant] and so unlikely to be able objectively to judge [his] guilt or innocence on the basis of the evidence presented at trial" that due process requires "a change of venue prior [even] to attempting selection of a jury."  *Id.* at 62.

Defendant has failed to establish such "extreme circumstances" here.  Defendant's argument on this point is premised, largely, on his assertion that one-third of the District of Columbia's population is employed by the federal government.  Dkt. 24 at 2; *see* Dkt. 28 at 7–8.  Because, according to Defendant, these individuals "have a vested interest in supporting their employer," the jury pool in this District is "considerably bias[ed]."  Dkt. 24 at 2.  This, however, is exactly the kind of conjecture that is insufficient to warrant transfer prior to jury selection.  *See Haldeman*, 559 F.2d at 64.  The purpose of *voir dire*, after all, is "to make sure jurors do not harbor biases for or against the parties."  *Faria*, 852 F.3d at 95.  Although Defendant is skeptical that *voir dire* will serve its purpose in this case, there is no reason to believe that members of the jury venire will even know who he is or what he allegedly did on January 6, much less that a significant number of the members of the venire will lack the capacity to evaluate the case against Defendant based solely on the facts of *his* case.  Nor, more generally, is there reason to believe that the *voir dire* process will prove ineffective in identifying any members of the venire who lack the requisite impartiality to serve on a jury.  In any event, Defendant remains free to

renew his motion following *voir dire* should he feel such a motion is warranted.

The government's opposition focuses on a slightly different argument, based on the possibility that pretrial publicity has so tainted the jury pool that jury selection is incapable of producing an impartial jury.  *See* Dkt. 25 at 6–8.  But, in his reply, Defendant expressly disclaims any such argument, maintaining instead that widespread publicity of the events of January 6, 2021, means that "the people in New York"—including, presumably, those in his desired venue (the Northern District of New York)—"have just as much information on the event as the people in D.C."  Dkt. 28 at 6; *see also id.* (noting that the government's brief "argu[es] about pretrial publicity not affecting a jury pool and wonder[s] why [Defendant] ha[s] not cited any cases" on that point and clarifying that Defendant "wasn't trying to make that claim in the original motion").  The Court agrees that residents of both New York and D.C. have access to media coverage regarding the events of January 6, 2021.  But that undermines, rather than supports, Defendant's position.  The fact that there has been "ongoing media coverage" of the breach of the Capitol and subsequent prosecutions, "both locally and nationally," means that the influence of that coverage would be present "wherever trial is held."  *In re Tsarnaev*, 780 F.3d 14, 22 (1st Cir. 2015); *see also Haldeman*, 559 F.2d at 64 n.43 (noting that "a change of venue would have been of only doubtful value" in the Watergate prosecutions because much of the media coverage was "national in [its] reach").  In such circumstances, the aims of Rule 21(a)—addressing prejudice to the Defendant—would not be served by transfer.  Thus, instead of transferring the case, the Court's task will be to conduct a sufficiently thorough *voir dire* to ensure that those who are selected to serve on the jury "can lay aside [whatever] impression[s] or opinion[s]" they may have "and render a verdict based [solely] on the evidence presented in court."  *Irwin v. Dowd*, 366 U.S. 717, 723 (1961).

The Court, accordingly, finds that transfer is not proper under Rule 21(a) at this juncture.

**B.     Rule 21(b)**

That leaves the second, discretionary basis for transfer—inconvenience to the parties. Unlike Rule 21(b), the Court "*may* transfer the proceeding . . . against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b) (emphasis added). "There is a general presumption that a criminal prosecution should be retained in the original district," and that presumption is overcome only by a showing that "a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *United States v. Bowdoin*, 770 F. Supp. 2d 133, 138 (D.D.C. 2011); *see also United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.). Significantly, that presumption not only furthers consistency and judicial economy but also has roots in the Constitution itself. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI.

Courts typically consider the following ten factors in deciding whether transfer to grant a motion to transfer under Rule 21(b): (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *See*, *e.g.*, *United States v. Quinn*, 401 F. Supp. 2d 80, 85 (D.D.C. 2005); *Bowdoin*, 770 F. Supp. 2d at 137; *Spy Factory*, 951 F. Supp. at 455; *United States v. Gamble*, 19-cv-348, 2020 WL 5062938, at *4 (D.D.C. Aug. 27, 2020); *United States v. Shantia Hassanshahi*, No. 13-cv-0274, 2015 WL 7307079, at *2 (D.D.C. Nov. 19, 2015). Because the Supreme Court referred to these factors in

*Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964), albeit without deciding whether Rule 21(b) compels consideration of each such factor, they are often referred to as the *Platt* factors.  Evaluation of the particular circumstances of each case is committed to "the sound discretion of the trial court."  *Jones v. Gasch*, 404 F.2d 1231, 1242 (D.C. Cir. 1967).  The *Platt* factors weigh against transfer here.[1]

      1.      *Factors 1, 2, 3, 4, & 7*

As for the first factor, the government does not dispute that the Defendant is himself located in the Northern District of New York.  Dkt. 25 at 17.  But "the D.C. Circuit has indicated that, although the defendant's residence is a factor to be considered, is it not the controlling factor and its significance derives 'solely from its relationship to the convenience of witnesses, records, and counsel,'" *Bowdoin*, 770 F. Supp. 2d at 138 (quoting *Jones*, 404 F.2d at 1240); *see also Quinn*, 401 F. Supp. 2d at 86 (describing this factor as "only a minor consideration").  And here, the "convenience of the witnesses, records, and counsel," *Bowdoin*, 770 F. Supp. 2d at 138, all weigh against transfer.  The events at issue in this case took place just steps from the courthouse, and the government represents that it "anticipates that most of its witnesses are located either in or in close proximity to the District of Columbia" and that "[t]he discovery materials in this case originated in the District of Columbia."  Dkt. 25 at 18–19.  As for the evidence, however, the Court's understanding is that the bulk of the discovery materials are in electronic format, and thus this consideration does not weigh as heavily against transfer as the

---

[1] The government "submits that [Defendant] has waived argument with regard" to many of the *Platt* factors because he did not raise them in his motion.  Dkt. 25 at 18.  And it is true that Defendant does not even mention the *Platt* factors until his reply brief.  *See* Dkt. 28 at 4–6.  But, as noted above, Defendant is representing himself in this matter.  And given that the Court is unpersuaded that transfer is appropriate even considering the arguments Defendant belatedly raises in his reply brief, the Court need not rely on waiver to deny Defendant's motion.

government's argument might suggest.

Although Defendant suggests he may seek to call witnesses who reside in New York, Dkt. 28 at 10, "a naked allegation that witnesses will be inconvenienced by trial in a distant forum [generally] will not suffice for transfer;" instead, Defendant "must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial" so that the Court may "rely on concrete demonstrations of the proposed testimony." *Spy Factory*, 951 F. Supp. at 456 (quotation marks omitted). Defendant falls well short of providing the Court with the necessary level of specificity. As for location of counsel, Defendant has chosen to represent himself, the government's prosecution is based out of the District of Columbia, Dkt. 25 at 19, and the Assistant United States Attorney assigned to this case, whom the docket indicates is based out of Philadelphia, will need to travel regardless of the outcome of this transfer motion— and has, at any rate, expressed a preference for trial in this District, *see id.*[2]

As a result, those factors taking into account the location of possible witnesses, relevant events, evidence, and counsel—the second, third, fourth, and seventh *Platt* factors—militate against transfer, and outweigh considerations relating to Defendant's location (the first factor).

2.    *Factors 5 & 6*

In addition to his location, Defendant leans heavily on the costs he will incur in traveling to this District to defend himself in these proceedings, a seeming appeal to the fifth and sixth *Platt* factors. Under those factors, Defendant must demonstrate that litigating in this forum will impose a "considerably greater burden" than litigating in his preferred venue. *Quinn*, 401 F.

---

[2]  The Court notes that Defendant's stand-by counsel is located in Syracuse, New York, but neither Defendant nor his stand-by counsel posits that it would pose an undue burden on stand-by counsel to travel to the District of Columbia for trial, and he is available in Syracuse to assist Defendant with his trial preparation.

Supp. 2d at 88.  To make this showing, Defendant points to the "fuel costs, travel times[,] and accommodations," associated with travel to Washington, D.C.  Dkt. 24 at 2; *see also* Dkt. 28 at 10.  As the government notes in response, however, the force of this argument is blunted by the reality that Defendant "voluntarily traveled to and from New York to Washington, D.C. on January 6, 2021" to participate in the events underlying the charges against him, Dkt. 25 at 17, and the Court has no reason to conclude that Defendant lacks the means to return to the District of Columbia for trial, which is unlikely to last more than a few days.  Moreover, even though traveling to the District of Columbia will impose some cost on Defendant, he has failed to carry his burden of showing that those costs outweigh the costs (including lost time) the government and witnesses would incur in traveling to the Northern District of New York for trial.  *See Quinn*, 401 F. Supp. 2d at 88 ("*Platt* explicitly calls for courts to consider the 'expense to the *parties*,' rather than the 'expense to the *defendant*.'" (quoting *Platt*, 376 U.S. at 244)).

Defendant alludes to the possibility that he may wish to call character witnesses who live in New York and that they would need to travel to the District of Columbia to testify.  Dkt. 28 at 10.  But even if transfer would alleviate the additional expense associated with such travel, "there would be at least a partially offsetting increase in *prosecution* expenses" in transporting evidence, witnesses, and counsel to the Northern District of New York for trial.  *Quinn*, 401 F. Supp. 2d at 88.  Defendant may, moreover, seek assistance from the Court by filing a motion under Rule 17(b) showing that he is unable "to pay the witness's fees and the necessity of the witness's presence for an adequate defense."  Fed. R. Crim. P. 17 (b).

Defendant's remaining arguments as to the cost of trial in this District are also unpersuasive.  Defendant points to the expense of "preparation for trial hearings," which he claims will be exacerbated because he "do[es] not get paid to litigate."  Dkt. 24 at 2.  But

Defendant offers no reason to believe that, separate and apart from expenses related to travel, his costs of preparing for trial will be greater in this District than in the Norther District of New York. Defendant has failed to demonstrate, in other words, that his fears of increased litigation costs in this District justify transferring this matter. Nor is Defendant's unelaborated assertion that travel to the District of Columbia will disrupt his business because he will not receive "paid time off," Dkt. 28 at 10, sufficient to make that showing. Although the Court is sympathetic to the costs attendant to missing work, "inconvenience and interference with normal occupational and personal activities occur whenever a defendant is involved in a trial facing serious charges." *Spy Factory*, 951 F. Supp. at 458 (quotation marks omitted). Defendant has failed to explain how trial in this District, rather than in New York, will substantially increase those costs.

The Court, accordingly, concludes that the fifth and sixth factors do not weigh heavily in either direction.

3.      *Factors 8 & 9*

The eighth and ninth factors—the relative accessibility of the place of trial and the docket condition of each district—likewise fail to advance Defendant's argument. Although Defendant claims than the Northern District of New York is "more easily accessible to at least the majority of the parties and counsel involved in this case," Dkt. 28 at 5, the Court cannot credit this unsupported assertion. As for docket conditions, Defendant argues that this Court has more criminal cases pending that the Northern District of New York, which, according to Defendant, suggests that "the New York venue is comfortable taking on more cases." *Id*. But the focus of this factor is not the absolute number of cases in either district. Instead, the question is whether the Court "will reach a disposition here sooner than it would if the case were transferred," *Quinn*, 401 F. Supp. 2d at 89, which turns in part on "this Court's familiarity with the background, facts,

legal arguments and parties to this prosecution," *Bowdoin*, 770 F. Supp. 2d at 142.  Given this

Court's experience with this case specifically, and with the January 6 prosecutions more

generally—including the challenges posed by the omnibus discovery process in those cases—the

Court is unconvinced that transfer would expedite resolution of this case or would serve the

interest in judicial economy.

    4.    *Factor 10*

    Under the last factor—special elements which might affect transfer—Defendant

maintains that "a pattern has emerged of violence" at courthouses during "heavily publicized"

and "politically polarized" trials.  Dkt. 28 at 5.  Defendant continues that this "pattern" gives

rises to security concerns that, according to Defendant, further support the need to transfer the

case to the Northern District of New York.  But Defendant offers little to substantiate these

concerns, and—more importantly—gives no reason why transfer to another venue would

alleviate them.  This factor, too, fails to weigh in favor of transfer.

*    *    *

    Having considered each of the *Platt* factors, the Court concludes that Defendant has

failed to overcome the "general presumption that a criminal prosecution should be retained in the

original district," *Bowdoin*, 770 F. Supp. 2d at 138, and so, consistent with Article III and the

Sixth Amendment, the Court finds that this District (where the Defendant's crimes were

allegedly committed) is the most appropriate venue for Defendant's trial.

**CONCLUSION**

    For the foregoing reasons, Defendant's motion to transfer, Dkt. 24, is **DENIED**.

    **SO ORDERED**.

/s/ Randolph D. Moss<br>RANDOLPH D. MOSS

11

United States District Judge

Date:  January 12, 2022