# James W. Mikesell, Ph.D., ABPP

**Board Certified in Forensic Psychology**
**Board Certified in Rehabilitation Psychology**
Web: www.jameswmikesellphd.com    Email: jwmikesellphd@gmail.com

| **Correspondence Address:** | **Practice Address:** | **Contact:** |
|---|---|---|
| **4465 E. Genesee Street** | **7000 E. Genesee Street** | **Phone:  (315) 449-0117** |
| **Box 303** | **Lyndon Office Park, Building C** | **Fax:        (315) 449-9623** |
| **DeWitt, NY  13214** | **Fayetteville, NY  13066** | |

## Confidential Forensic Psychological Evaluation

Name of Examinee:   Eric Bochene                    Date of Examination:  3/13/23
Date of Birth:          1971[1]                              Date of Report:         4/3/23

### Reason for Examination

Eric Bochene is a 51-year-old male referred by United States District Judge Randolph Moss in the matter of the United States of America v. Eric Bochene, United States District Court for the District of Columbia, Criminal Action No. 21-cr-418 (RDM).  More specifically, this examiner was asked to determine, "…pursuant to 18 U.S.C. § 4247(c), as to whether Mr. Bochene suffers from severe mental illness to the point where he is not competent to conduct trial proceedings by himself, see *Indiana v. Edwards*, 554 U.S. 164, 178 (2008), and as to whether Mr. Bochene is presently mentally competent to understand the nature and consequences of the proceedings against him and to properly assist in the preparation of his defense, see 18 U.S.C. § 4241(d)."

### Examination on 3/13/23

➢ Interview, Mental Status & Behavioral Observations
➢ Administration of the Minnesota Multiphasic Personality Inventory, 3rd Ed. (MMPI-3)
➢ Functional Assessment of Competence to Self-Represent

### Consent and Statement of Non-confidentiality

This examiner provided a full explanation for the purpose of the evaluation, the examinee's ability to understand the charges against them, and the ability to assist the attorney in the defense against the charges noted above.  Mr. Bochene stated that he was sufficiently capable of understanding the reason for the evaluation and ultimately provided consent, but also emphasized that he did not really feel that he had much of a choice regarding his participation due to the Court Order.  Nevertheless, at the least, his assent was obtained.

### Assessment of Mental Disease or Defect

### Mental Status and Behavioral Observations

Mr. Bochene presented as a man who appeared his stated age.  He was well groomed and neatly dressed in a black suit and black tie.  His eye contact was good.  He was somewhat defensive initially but quickly warmed up to the interview process and was generally cooperative.  His

---

[1] Mr. Bochene declined to provide his full date of birth but indicated "71" for the year when completing a psychological test.

speech was of normal rate and tone.  His thought processes were generally rational, although at times tangential on points he considered salient to his case.  He was readily redirected, however, when required.  His mood was mildly anxious and his affect was congruent with his mood.  He did not appear to be responding to internal stimuli.  He did not evidence any aberrations in mannerisms or thought.  His insight and judgment were generally good.

As stated previously, Mr. Bochene was initially somewhat challenging this examiner as to the legitimacy of the examination because he thought that the charges against him lacked foundation.  He appeared to respond well to subsequent dialogue about his circumstance and became less defensive and much more open in his opinions and demeanor.

## Personal Interview

The interview with Mr. Bochene took about one hour and thirty minutes and was audio recorded.[2]  The psychological testing ensued thereafter.

Mr. Bochene provided basic background information but declined to provide his date of birth.  He later, during the testing portion of the examination, consented to provide his year of birth and indicated to the examiner that his birthday was later in the year than the date of the examination.[3]

Mr. Bochene denied a history of developmental delay or psychiatric problems.  Per his report, he had a high IQ and graduated from high school in three years and subsequently took some college classes.  He described himself as a "Renaissance Man" with a wide range of interests and passions and, as a result, followed a somewhat unconventional career path.

He denied current substance abuse problems.  He admitted to the experimentation with drug in the early 1990's but has been free of the use of drugs for a number of years.  He reported an unremarkable legal history aside from a misdemeanor in the 1990's when he was partying too much.

Mr. Bochene reports that he is in good health and is not prescribed any medication.  He is a rare consumer of the health care system per his report.

## Psychological Testing

The results of the MMPI-3 were considered valid for purposes of clinical interpretation.  No indicia were suggestive of the over- or under-reporting of signs or symptoms of psychopathology.  These findings were clinically unremarkable, meaning there were no indications of clinically significant psychological dysfunction.  There were moderate indications of an inflated sense of self-importance and a domineering interpersonal style, but these personality characteristics did not rise to the threshold of clinical significance nor were they suggestive of severe underlying psychopathology.  His MMPI-3 testing results could be readily found among a significant subset of normal functioning adults.

---

[2] At the inception of the interview, Mr. Bochene insisted that the interview be recorded.  This examiner stated that he would then need to record the interview, too, if done so by Mr. Bochene, in order to ensure the validity of recordings.
[3] This allowed this examiner to determine his chronological age for purposes of testing norms, which Mr. Bochene understood.

**Opinion Regarding Mental Disease or Defect**

Based on his overall presentation, observed mental status and clinical presentation, along with the results of objective psychological testing, it is concluded within a reasonable degree of certainty that Mr. Bochene does not meet legal standard for mental disease or defect, and that any potentially relevant DSM-5-TR diagnosis would not meet the legal standard for mental disease of defect as contemplated by the statute (i.e., adjustment disorders, or generalized anxiety disorders, would not rise to such a threshold).

> DSM-5-TR Impression:  309.24, Adjustment Disorder, with anxiety, likely secondary to current legal stressors
> V62.5, Problems Related to Other Legal Circumstances

> DSM-5-TR diagnosis *considered but not formally diagnosed*:
> F07.0, Unspecified Personality Disorder with Paranoid and Narcissistic Features[4]

It is the opinion of this examiner that Mr. Bochene possesses some dysfunctional personality traits that can become maladaptive and/or create episodic functional impairments, but that they do not appear to rise to the threshold of a) a formal DSM-5-TR Personality Disorder diagnosis, nor b) do these traits rise to the statutory threshold of a mental disease or defect.  He can be flamboyant and provocative in his interpersonal style but these are likely the characteristics of dysfunctional personality traits versus more severe elements of a mental disease or defect.

## Assessment of Competence to Self-Represent

**Assessment Framework**

The assessment of competence to self-represent is necessarily a process based off the 2008 ruling, *Indiana v. Edwards*, by the Supreme Court of the United States (SCOTUS).  In that ruling, SCOTUS stated, in part, "We consequently conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so.  That is to say, the Constitution permits States to insist upon representation by counsel for those

---

[4] Per the DSM-5-TR, "Personality traits are enduring patterns of perceiving, relating to, and thinking about the environment and oneself that are exhibited in a wide range of social and personal contexts.  Only when personality traits are inflexible and maladaptive and cause significant functional impairment or subjective distress do they constitute personality disorders.  The essential feature of a personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from the norms and expectations of the individual's culture and is manifested in at least two of the following areas: cognition, affectivity, interpersonal functioning, or impulse control; this enduring pattern is inflexible and pervasive across a broad range of personal and social situations; leads to clinically significant distress or impairment in social, occupational, or other important areas of functioning; the pattern is stable and of long duration, and its onset can be traced back at least to adolescence or early adulthood; the pattern is not better explained as a manifestation or consequence of another mental disorder; and, is not attributable to the physiological effects of a substance."  Diagnostic and Statistical Manual of Mental Disorders : Fifth Edition Text Revision DSM-5-TR™, | American Psychiatric Association,https://ebooks.appi.org/epubreader/diagnostic-statistical-manual-mental-disorders-fifth-edition-text-revision-dsm5tr

competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."

As further clarified by Berger (2016), "Hence, if a defendant suffers from 'severe mental illness' and cannot satisfy the higher competency standard that is needed to conduct trial proceedings, a court can require that he or she be represented by an attorney without infringing upon the Sixth Amendment right to self-representation."

Berger (2016) added, "Much of the scholarly literature written in the aftermath of *Edwards* has focused on suggesting the exact standard of representational competence that a trial court should apply if it chooses to assess whether a given defendant is competent to conduct trial proceedings, a question left unanswered by the high Court's decision." Put differently, guidance has been limited to what threshold is needed to establish sufficient competency to self-represent.

The final consideration pertaining to the forensic psychological assessment of self-representation in the extent to which a pro se defendant must possess essential, or even minimal, legal skills. As described by Saxton and Resnick (2017), "The Seventh Circuit indicated that the *Klessig* decision strayed from the 'mental functioning' sense of competence over to educational achievement and familiarity with the criminal justice system (*Tatum*, p 467)," and "The Seventh Circuit said that state courts mistakenly thought that *Edwards* introduced the possibility of considering a defendant's legal knowledge. In *Edwards*, the U.S. Supreme Court held that the state may force counsel upon a defendant in the scenario where the accused is mentally competent to stand trial if represented, but is 'not mentally competent to conduct that trial himself' (*Edwards*, p 167). The Seventh Circuit emphasized that the opinion in *Edwards* was focused on mental competence, rather than a particular skill. In summary, the Seventh Circuit's ruling in *Tatum* emphasizes that the right to represent oneself is a constitutional right that is not to be infringed upon based on a lack of education, skill, or achievement; rather, competence to proceed *pro se* must be considered as it relates to mental functioning." In other words, mental functioning clinically attributed to mental disease or defect.

In response to the need for operational guidance in assessing a reasonable threshold for competency to self-represent, scholars and practitioners began to craft models and proposed guidelines (e.g., see LeCluyse, 2015; Patton et al, 2019; White & Gutheil, 2016). A digested version of these works suggests that a functional appraisal of self-representation include: 1) dysfunction in goal-directed behaviors attributed to neurocognitive or psychiatric disorder(s); 2) speech and/or language dysfunction that is neurologic and/or psychiatric in nature; 3) sufficient reality testing, absence of clinical paranoia, and/or disordered personality; 4) sufficient affective control and reasonable management of impulsivity; and 5) sufficient cognitive ability not encumbered by medication side-effects, substance-related abuse, active hallucinations, sequelae of traumatic brain injury or other forms of neurological dysfunction, persistent effects of delirium/confusion, and/or severe intellectual disability.

These guidelines also recommend a functional assessment of basic procedural elements of the courtroom, trial process, and various "trial tasks" common to the criminal proceedings (e.g., rights to pretrial discovery, to object to prosecution evidence based upon rules of evidence, subpoena witnesses for the defense, etc.).

**Application of the Assessment Framework to Mr. Bochene**

As discussed previously in this report, Mr. Bochene's clinical presentation throughout the course of the examination was not consistent with significant mental illness or frank psychiatric disturbance.  He was, at least initially, somewhat defensive and, in this writer's mind, overly litigious with the use of terminology and/or the basis for his objections to the charges against him, but he was always able to discuss these issues in a relatively rational and coherent manner. He accepted challenges to his point of view without upset or sign of psychological regression.

There were no indications during the examination process that Mr. Bochene evidenced clinically significant problems with items #1-5 outlined on the previous page of this report.  He did not demonstrate impediments in  goal-directed behavior due to neurologic or psychiatric dysfunction; he was sufficiently capable of communicating without signs of psychiatric interference or neurologic limitation; he had sufficient reality testing, albeit at times matched with an inflated sense of self or perseverating on his point of view; he showed consistently good control of his affect and behavior; and he did not evidence any clinical signs of cognitive impairment.

As for a functional assessment of how to navigate or manage trial processes or "trial tasks," Mr. Bochene, politely but nevertheless stridently, rejected the premise of these questions, for a variety of reasons, which can perhaps best be summarized as:

1.  He viewed the charges against him as frivolous and in violation of his 1st Amendment rights.
2.  He asserted that the Court does not have jurisdiction to bring charges against him and that Federal Laws are subordinate to Uniform Commercial Code (UCC), which falls under United States Code (USC).
3.  There is a bias in the legal system that ostensibly compels an individual choosing to self-represent to conform and accept the assignment of an attorney, even if that individual feels philosophically or morally opposed to such assignment.

When asked what his broader legal strategy was for his case, he reiterated that he was "standing on the actual laws and…mostly commercial and international treaties…" and that he was applying "positive law and affirmative defense standards."  He defended his legal strategy based, in part, on his general distrust of the legal process and his belief that the charges against him are politically motivated.

This writer pressed him on how he planned to reconcile his position with the clear position of the Court that, indeed, the United States of America has brough charges against him and that it is evident to this writer that it appears necessary to mount a defense rather than continue to protest the legitimacy of the charges against him.  A hypothetical example was put to him to elucidate this point.  He was asked how reasonable it would be for a student to enter a school, explain to the principal that he does not agree with some of the rules of the school, did not believe that he/she should be accountable for violations of these rules, but still expected to remain within the school building and receive a full education.  Upon hearing this hypothetical example, Mr. Bochene acknowledged that his approach to the Court could be problematic for him.  When

asked what he considered to be a reasonable solution to this conundrum, he reported that he would favor some form of arbitration, although no specific details were offered.  This said he did appear to be somewhat conciliatory and, perhaps, eager to arrive at a suitable resolution.

Further, and somewhat related to the points above, Mr. Bochene also stated that he wished to have a clear and detailed explanation of the duties and obligations of standby counsel.  He did so after this examiner asked him about his working relationship with standby counsel, and he appeared to be reconsidering the potential benefits of some guidance, although this impression is speculative.

In sum, with regard to the assessment of Mr. Bochene's competence to self-represent, there are no significant clinical or functional barriers suggesting he does not have the ability to do so.  His arguments against the charges and the legitimacy of the Court are more on esoteric and philosophical grounds, with an element of an anti-authority stance as well.  While arguably viewed by many as a poor choice on his behalf, his position and reasoning is not born of mental disease or defect, and are likely due to personal conviction, interpersonal intransigence, and some elements of entrenched personality traits.

## Opinion Regarding Competence to Self-Represent

While it can be reasonably argued that his apparent recalcitrant approach to his defense of the charges against him are disruptive and, perhaps, ill-advised, such conduct does not in the opinion of this examiner rise to the threshold of an inability to understand the nature and consequences of the proceedings against him and to assist in the preparation of his defense.  Whether his strategy or preparation is effective or legally advisable is yet another matter.

Indeed, he can become contrary rather quickly if he perceives he is justified in doing so, but also demonstrates the ability to be conciliatory, at times.  Further, at times he appears to view himself as "above the fray," which contributes to the view by others that he can be, at least at times, irrational or arbitrary in his decision-making.

All this said, the cognitive basis for his reasoning is predicated primarily on resistance to the foundational authority of the government to bring forth the charges against him, not from a serious mental disease or defect.

Additionally, psychological testing appears to reinforce the conclusion of an absence of severe psychopathology.

Last, this opinion is bolstered by the conclusion of this writer that there is insufficient indication of a mental disease or defect.  Hence, at least in the view of this examiner, absent demonstrable clinical evidence of a mental disease or defect, *Indiana v. Edwards* may not be applicable in this case.

## Opinion

It is the opinion of this examiner, within a reasonable degree of clinical certainty, that:

1. Mr. Bochene does not meet the legal standard for mental disease or defect;
2. His functional capacity to self-represent is adequate, and any potential liabilities in doing so are likely due to personal choice, and not due to mental disease or defect.


James W. Mikesell, Ph.D., ABPP
NYS #010649, ABPP #7913 & #9233


Note:  I, James W. Mikesell, Ph.D., ABPP, as a psychologist duly licensed to practice in the State of New York and authorized by law to practice in the State as a psychologist, hereby affirm under the penalty of perjury that statements contained herein are true and accurate.  The findings and conclusions of this evaluation are made by this examiner with a reasonable degree of certainty and are subject to modification should additional information not yet provided or reviewed by this examiner become available.  I further certify that the signature appearing below is my electronic signature as defined by the NYS Technology Law §302(3) and 15 USC §7001, and that I have personally placed this electronic signature on this report and that facsimiles and copies of this report shall be deemed original.

## References

Berger, T. A. (2016). The aftermath of Indiana v. Edwards: Re-evaluating the standard
    of competency needed for pro se representation. Baylor Law Review, 68(3), 680-727.

LeCluyse, E. (2015). The spectrum of competency: determining standard of competence for pro
    se representation. Case Western Reserve Law Review, 65(4), 1239-1268.

Patton, C., Johnston, E., Lillard, C. & Vitacco, M. (2019).  Legal and clinical issues regarding
    the *Pro Se* defendant: Guidance for practitioners and policy makers.  Psychology, Public
    Policy, and Law, 25(3), 196-211.

Saxton, A. & Resnick, P. (2017).  Competence to proceed pro se.  The Journal of the American
    Academy of Psychiatry and the Law, 45(4), 503-505.

White, M. & Gutheil, T. (2016).  A proposed model for assessing defendant competence to self-
    represent.  Journal of the American Academy of Psychiatry and Law, 44, 425-436.