1

2              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA

3

4    UNITED STATES OF AMERICA,

                                        Criminal Action
                Plaintiff,              No. 1:21-cr-0418
5

6          vs.                          Washington, DC
                                        September 2, 2021
     ERIC BOCHENE,
7
                                        2:11 p.m.
                Defendant.
8    _____/

9

10             TRANSCRIPT OF VIDEO STATUS CONFERENCE
            BEFORE THE HONORABLE RANDOLPH D. MOSS
11               UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13

     For the Government:    ANITA EVE
14                          USAO-PA
                            615 Chestnut Street
15                          Philadelphia, PA 19106

16

     For the Defendant:     JOHN GILSENAN
17   (Standby Counsel)      FPD-NY
                            4 Clinton Square, 3rd Floor
18                          Syracuse, NY 13202

19

20

21

22

     Court Reporter:        JEFF HOOK
23                          Official Court Reporter
                            U.S. District & Bankruptcy Courts
24                          333 Constitution Avenue, NW
                            Room 4700-C
25                          Washington, DC 20001

1        P R O C E E D I N G S

2        **DEPUTY CLERK:**  This is criminal action 21-418, the

3    United States of America v. Eric Bochene.  The defendant is

4    appearing by video.  Also by video for the government, Anita

5    Eve; and for defendant, John Gilsenan.

6        **THE COURT:**  Well, thank you all.  When we left off

7    last time, we were discussing whether Mr. Bochene would

8    exercise his constitutional right to represent himself or

9    whether he wanted to be represented by counsel in the case.

10   I suggested that he take some time to talk to Mr. Gilsenan

11   about that, see whether Mr. Gilsenan would be prepared, if

12   Mr. Bochene does proceed in that manner, to appear as

13   standby counsel, and also to give Mr. Bochene a chance to

14   think about that important decision.

15        Before we get going here, let me just first ask

16   Mr. Gilsenan whether he's conferred with Mr. Bochene about

17   our proceeding by videoconference today, and if so, what

18   Mr. Bochene's view is about that?

19        **MR. GILSENAN:**  Judge, I believe Mr. Bochene's okay

20   with proceeding by video today.

21        **THE COURT:**  Well, let me ask --

22        **MR. GILSENAN:**  Eric, is that okay?

23        **THE COURT:**  Mr. Bochene?

24        **THE DEFENDANT:**  I think the last time we were on,

25   I said I generally am okay with it.  Actually, part of me

1    says it's a bit weird and new in terms of procedure, but I'm

2    generally okay with it.

3    THE COURT:  Well, if you would prefer to appear

4    in-person, just let me know and we can arrange to do it that

5    way, okay?

6    THE DEFENDANT:  I think that would -- if we

7    proceed to trial, I mean, obviously a trial would -- yeah.

8    THE COURT:  A trial would certainly be in-person,

9    but I just mean for purposes of today.

10    THE DEFENDANT:  Yeah, no, I'm fine with today.

11    THE COURT:  Okay.  Well, the Court concludes in

12    light of the pandemic that it is appropriate for us to

13    proceed by videoconference today even though this is

14    obviously a very important proceeding and important decision

15    for Mr. Bochene to make.

16    Let me ask you, Mr. Bochene, having thought about

17    the issue for a couple of days, is it still your preference

18    or your decision that you would like to represent yourself

19    in this matter?

20    THE DEFENDANT:  Yes, indeed, I would have to say

21    that's affirmative.

22    THE COURT:  Okay.  I've gone through some of this

23    with you previously, but I do want to go through a number of

24    issues with you just to make sure that you're a hundred

25    percent sure that this is how you want to proceed and

1      understand the implications of doing that.

2              Let me ask you -- and I think I know the answer to

3      this, but I do want to just be clear on the record.

4      Mr. Bochene, have you ever studied law?

5              **THE DEFENDANT:**  Yes, if you lay it out in that --

6      traditional accredited, no.  But like one of our great

7      presidents, I guess you could call me self-trained, yes.

8              **THE COURT:**  And what have you done to self-train

9      yourself?

10              **THE DEFENDANT:**  I've been looking at how our law

11      works for well over two decades, just researching the

12      constitution of, like I said, various states, New York

13      state, the United States Constitution, the Bill of Rights.

14      Black's Law Dictionary, I've been in possession of many

15      editions of Black's Law Dictionary.

16              **THE COURT:**  Other than Black's Law Dictionary,

17      what other sources have you consulted?

18              **THE DEFENDANT:**  Cornell -- references under

19      Cornell, various U.S. courts, New York courts.  I could go

20      through a lot of those.

21              **THE COURT:**  By Cornell, are you referring to the

22      online site that publishes --

23              **THE DEFENDANT:**  Yeah, I'm not a big fan of that.

24      Yes, indeed, it's one that comes up a lot in search results.

25      I guess the only thing I like about it is the layout, it's

1    easy on the eyes.  But I find a lot of discrepancies, I find

2    some problems with it.

3            THE COURT:  Mr. Bochene, have you ever represented

4    yourself in a case, either a criminal or civil case, of any

5    kind?

6            THE DEFENDANT:  Only traffic court.

7            THE COURT:  And do you understand that you're

8    charged with the following crimes:  In count one, you're

9    charged with entering and remaining in a restricted building

10   or grounds in violation of 18 U.S.C. section 1752(a)(1); and

11   count --

12           THE DEFENDANT:  Judge, Judge, can I just pause

13   you, let me pull up the proper PDF to just go with you?

14           THE COURT:  That's fine, take your time.

15           THE DEFENDANT:  Sorry, I didn't have it pulled up.

16   I just want to read along.

17           THE COURT:  That's fine.

18           THE DEFENDANT:  Not that I doubt you, I'm just --

19           THE COURT:  No, I want to make sure you're clear

20   and you're understanding exactly what you're doing.  So

21   anything you want to consult is fine by me.

22           THE DEFENDANT:  I think I have it here, give me

23   one minute to find it.  Okay, yeah, go ahead.  You were on

24   18 U.S.C. 1752(a)(1)?

25           THE COURT:  Correct.  So count one charges you

1    with entering and remaining in a restricted building or

2    grounds in violation of 18 U.S.C. section 1752(a)(1).  Count

3    two charges you with disorderly and disruptive conduct in a

4    restricted building in violation of 18 U.S.C. section

5    1752(a)(2).  Count three charges you with violent entry and

6    disorderly conduct in a Capitol building in violation of 40

7    U.S.C. section 5104(e)(2)(D).  Count four charges you with

8    parading, demonstrating or picketing in a Capitol building

9    in violation of 40 U.S.C. section 5104(e)(2)(G).

10            Do you understand that?

11        **THE DEFENDANT:**  I have a comprehension of these.

12    Maybe it's a typo, but on the document I have that's sourced

13    to the prosecution, the third charge, 40 U.S.C.

14    5104(e)(2)(D), it has violent entry and disorderly conduct.

15    And on my document it says "and parading, demonstrating or

16    picketing in a Capitol building."  And then the final one

17    has that same latter part, but not the violent entry and

18    disorderly conduct part.  The way you read it does not match

19    what is on my document.

20        **THE COURT:**  Let me pull up the information in the

21    case.

22        **THE DEFENDANT:**  Judge, just to be more -- just to

23    be more specific, I was referring to page one where you have

24    the two columns on the right side in the paragraph sections

25    where it says -- it doesn't state it in that manner, so

1    there is a discrepancy.

2          THE COURT:  Okay.  Do you understand that the

3    operative charging document against you is the information

4    which is at docket 12?  Do you understand that's the

5    document which has charged you with the crimes at issue in

6    this case?

7          THE DEFENDANT:  Uh-huh.

8          THE COURT:  Do you understand that?

9          THE DEFENDANT:  Yeah, I get that.  And just for

10   the record, I did just receive discovery, but I did not

11   receive it directly from Ms. Eve there.  John Gilsenan just

12   sent it to me just minutes before the Zoom started here.

13         THE COURT:  I think that's what I asked to happen,

14   I asked Ms. Eve to send it to Mr. Gilsenan and Mr. Gilsenan

15   to provide it to you.  So do you understand that those four

16   counts that I outlined to you are the charges against you in

17   this case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that that could

20   change, the government could bring additional charges if it

21   concluded that there was a basis for doing so?

22         THE DEFENDANT:  I suppose that's -- it has that

23   prerogative.  Again, you know, I don't want to harp on the

24   use of understand or the stand under thing.

25         THE COURT:  Well, do you comprehend that that is a

1    possibility?  I don't know whether they will or they won't.

2    But do you understand that in a criminal case, it's always a

3    possibility that the government could bring additional

4    charges if information came to light that they thought

5    warranted bringing additional charges?

6            THE DEFENDANT:  I'm aware.

7            THE COURT:  Okay.  And are you aware as well that

8    if you're found guilty of the crime charged in count one,

9    which is a class A misdemeanor, that the Court must impose a

10   special assessment of $25; and that I could sentence you to

11   as many as 12 months in prison, impose a term of supervised

12   release that follows prison, fine you as much as $100,000

13   and order that you pay restitution; do you understand that?

14           THE DEFENDANT:  Can you go over those just again,

15   please?

16           THE COURT:  Yes.  I'm required to impose a special

17   assessment of $25 if you're found guilty; that I could

18   sentence you -- I might sentence you, I don't know what I

19   would do as we sit here today.  But if you were found

20   guilty, I could sentence you to as much as 12 months in

21   prison followed by a period of supervised release, and could

22   also impose as much as a $100,000 fine and order that you

23   pay restitution.

24           Do you comprehend that?

25           THE DEFENDANT:  Yes.  I'm taking notes on that.

1          **THE COURT:**  And are you also aware that if you're

2     found guilty of the crime charged in count two, which is

3     also a class A misdemeanor, the Court must impose a special

4     assessment of $25; and that I could sentence you to as much

5     as 12 months in prison followed by a term of supervised

6     release, and could impose a fine as large as $100,000 and

7     direct that you pay restitution?

8          **THE DEFENDANT:**  It sounds like that's the same as

9     the count one.

10          **THE COURT:**  Right, that is the same.  But do you

11     also understand that I could conclude that those penalties

12     should be imposed consecutively which would mean that it

13     would be up to a year followed by up to a year after that of

14     imprisonment on counts one and two, and that's before we

15     even reach counts three and four?

16          **THE DEFENDANT:**  Yeah.

17          **THE COURT:**  Are you aware of that?

18          **THE DEFENDANT:**  Yes.

19          **THE COURT:**  And are you aware that if you're found

20     guilty of the crime charged in count three, which is a class

21     B misdemeanor, the Court must impose a special assessment of

22     $10; and that I could sentence you to as much as six months

23     in prison followed by a term of supervised release and a

24     fine as high as $5,000, and also order that you pay

25     restitution on that count?

1              THE DEFENDANT:  Yes, right, got it.

2              THE COURT:  Do you understand that or are you

3     aware of that?

4              THE DEFENDANT:  I've noted it.

5              THE COURT:  And are you aware that if you're found

6     guilty of the crime charged in count four, which is also a

7     class B misdemeanor, the Court must impose a special

8     assessment of $10; and that I could sentence you to as much

9     as six months in prison followed by a term of supervised

10    release, order that you pay a fine of up to $5,000 and

11    direct that you pay restitution?

12             THE DEFENDANT:  I've noted that.

13             THE COURT:  And do you understand or do you

14    comprehend that?

15             THE DEFENDANT:  I comprehend, yes.  That's duly

16    noted.

17             THE COURT:  Do you comprehend that if you're found

18    guilty of more than one of those crimes, that I could

19    sentence you to consecutive terms, one after another, for

20    each of the counts?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And as I indicated before, do you

23    understand that it's always possible the government could

24    decide to file further charges in the case, and that in many

25    of the cases involving the events of January 6th, the

1    government has actually brought felony charges; and there

2    have been other cases in which the government started off

3    bringing misdemeanor charges and then they've added felony

4    charges carrying much higher sentences?  Do you understand

5    that that's always a possibility in any criminal case?

6          **THE DEFENDANT:**  I comprehend.  And just skimming

7    through it, I do give some respect to the FBI agent that

8    interviewed me.  He did make a couple of mistakes in my

9    statement, one namely about me being a member of

10   Communitarian.  No, no, no, I've been researching

11   Communitarians.  Like I said, I just started going through

12   it.  But I did note that the FBI agent did at least take my

13   statement and write it down quite in line with what I said.

14   There were a few mistakes.

15          However, looking at these charges, I have no

16   intent -- the FBI document states my intent was to be there

17   as an independent journalist.  And Judge, I brought

18   something to Mr. Gilsenan's attention, and I'll bring it to

19   the prosecutor --

20          **THE COURT:**  Before you do that, let me ask you one

21   other question.

22          **THE DEFENDANT:**  Go ahead.

23          **THE COURT:**  In light of some of the things that

24   you've just said here, do you also understand that one of

25   the really significant differences between having a lawyer

1    represent you and representing yourself is that anything

2    that you say to me in court, to the prosecutor or anything

3    that you say respecting your case in any way could

4    constitute an admission and could be used against you in the

5    case?  And your lawyer isn't subject to those same

6    conditions.  And you have a right to remain silent and not

7    to say anything that could be incriminating.

8            But if you're representing yourself, do you

9    understand that you run a risk that you may say something

10   that could be used against you?

11           **THE DEFENDANT:**  I comprehend that.  And I also am

12   aware of a few crucial and key components that makes me

13   representing myself have a much better standing than a

14   member of the bar representing me.  I have a much better

15   standing representing myself.

16           **THE COURT:**  And --

17           **THE DEFENDANT:**  There's things that I can do that

18   any member of the bar cannot do.  I've had Mr. Gilsenan

19   confirm that fact to me as well.

20           **THE COURT:**  Well, I'm not quite sure -- and I

21   don't want to get into your discussions with Mr. Gilsenan,

22   but let me say this:  Lawyers are bound to comply with the

23   rules and to comply with the law in the conduct of a case.

24   And the same thing is true obviously of somebody who's

25   representing themself, they're bound to follow the rules,

1    they're bound to follow the law in the case.  And there may

2    be some arguments that a lawyer feels the lawyer can't make

3    because they're not based in fact, for example.  That's

4    something that you would be well advised to avoid as well.

5    Because if you made an argument that wasn't based in fact,

6    you could find yourself in increased trouble for having done

7    that as well.

8         There may be -- and I'm not quite sure what you

9    have in mind.  There may be things that you can do that a

10   lawyer can't do.  But you are expected to comply with the

11   orders of the Court, the rules that govern proceedings, the

12   rules of evidence, the law, and to be truthful in your

13   representations to the Court.

14        Do you understand all of that?

15        **THE DEFENDANT:**  I comprehend very much.  Judge,

16   back many weeks ago -- back a number of weeks ago,

17   Mr. Gilsenan was implying that his initial communications

18   with Anita Eve was indicating that she wanted to propose a

19   plea deal to the lesser of those charges, the parading one,

20   and that it would involve no jail time, very minimal --

21        **MR. GILSENAN:**  Mr. Bochene?

22        **THE COURT:**  Yes, Mr. Gilsenan.

23        **MR. GILSENAN:**  Eric --

24        **THE COURT:**  -- prefer that Mr. Bochene not say

25   anything further?

1  **MR. GILSENAN:**  I would, Eric.  Mr. Bochene,

2  again --

3  **THE DEFENDANT:**  Okay, okay.

4  **MR. GILSENAN:**  -- what we talked about in

5  attorney-client confidence as to what possibly could happen

6  and what would likely happen and what we projected could

7  happen are all matters I think that you should not be

8  discussing in open court.

9  **THE DEFENDANT:**  Okay.  Well, I would like to enter

10  something --

11  **THE COURT:**  And related to that advice -- and this

12  is just another example of one of the difficulties of

13  representing yourself.  If you do inadvertently, or perhaps

14  intentionally, say something about your confidential

15  discussions with Mr. Gilsenan, you could waive the

16  privilege.  And you might find yourself in a situation in

17  which conceivably Mr. Gilsenan could become a witness

18  against you in the case if you waive the privilege by

19  something that you said to the prosecution and the Court.

20  So there are a lot of pitfalls and risks involved in

21  representing yourself in a case.

22  Do you comprehend that?

23  **THE DEFENDANT:**  Yes, I do.  I'm not sure where

24  we're at right now.  I have a lot of information and

25  questions, and if we want to focus this hearing on just this

1    decision, I comprehend that.

2        **THE COURT:**  That's what I'd like to start with,

3    but then after we do that, then I'm happy to entertain any

4    questions you have.  And if any of your questions relate to

5    representing yourself, you should definitely ask me.  And if

6    you want to confer with Mr. Gilsenan privately about

7    anything relating to representing yourself, you're welcome

8    to do that at any point during today's proceedings, okay?

9        **THE DEFENDANT:**  Yes, indeed.

10        **THE COURT:**  Okay.  So do you also understand that

11    if you decide to represent yourself, you will be on your

12    own, and I can't advise you about the law, about what to do,

13    what not to do?  I'm not your lawyer, I'm the judge, so I

14    can't give you any advice with respect to what you're doing

15    in the case; do you understand that?

16        **THE DEFENDANT:**  Yes, I do.

17        **THE COURT:**  And do you understand that unless

18    perhaps if Mr. Gilsenan serves as your standby counsel,

19    there's not going to be anybody you can turn to for advice

20    if you represent yourself?

21        **THE DEFENDANT:**  Yes.  And on that note, I did

22    request some sort of agreement, what the obligations are

23    that fit into that definition.  And I have yet to receive

24    what standby counsel entails, doesn't entail; I've yet to

25    receive that.

1          **THE COURT:** Well, maybe I could ask at this point

2    in time if Mr. Gilsenan could address that and whether you'd

3    be prepared to serve as standby counsel, and if so, in what

4    capacity you would propose serving that function?

5          **MR. GILSENAN:** Judge, I would be happy to be

6    standby counsel, if that's what Mr. Bochene wants.  I mean,

7    I don't want to limit myself to any particular duties.  I

8    essentially would be here for Mr. Bochene to seek advice

9    from.  If he wanted to have a trial and we proceeded to

10   trial, I could participate in any capacity he'd want me to.

11         **THE COURT:** Mr. Bochene, so I think that what

12   Mr. Gilsenan is saying is that it would be in your hands; if

13   you wanted assistance from Mr. Gilsenan, he would be

14   available to step in.

15         Does that address your concerns?

16         **THE DEFENDANT:** So, for the record, John, you just

17   stated that you could provide me with a terms and condition,

18   a contract?

19         **THE COURT:** I think he said that he didn't think

20   it made sense to specify in advance exactly what he would or

21   wouldn't do, because the sort of circumstance can be very

22   fluid.  What might make sense today might not make sense

23   three months from now.  If you decide that you want to

24   discuss a plea, for example, with the government,

25   Mr. Gilsenan's role might be very different than if you're

1    actually in trial and you find yourself struggling with the

2    rules of evidence and that I'm not allowing you to admit

3    stuff you want to admit.  And then you might want to turn to

4    Mr. Gilsenan for advice about how to admit exhibits.  So his

5    role I think would be flexible.  I think what he's saying is

6    he's prepared and willing to be there to provide you with

7    the advice that you request, consistent with his ethical

8    obligations.

9         **THE DEFENDANT:**  Yeah, that's putting me in a box

10   that I don't -- can we back up and --

11        **THE COURT:**  I don't think that's something -- I

12   mean, the only box you're in, I think, for present purposes

13   today is deciding -- making the decision about whether you

14   want to represent yourself or not.  That's an important --

15   an incredibly important decision.  But I don't think

16   Mr. Gilsenan is putting you in a box, because I think what

17   he's saying is:  I'm prepared to do whatever you want.  If

18   you want my help, I'm happy to give it to you; if you don't

19   want my help, I'm not going to offer it; if you want my help

20   on question A, I'll give it to you on question A; and if you

21   don't want it on question B, I won't give it to you on

22   question B; if you want me to stand up in court, I'll do

23   that; if you don't want me to stand up in court, I won't do

24   that.

25              Am I correct, Mr. Gilsenan, that's what you're

1    saying?

2              **MR. GILSENAN:**  Yes, Judge.

3              **THE DEFENDANT:**  Well, from my perspective, Judge,

4    I've had a file which consisted of a motion to dismiss, and

5    it seems that it's been hindered, was never filed.

6              **THE COURT:**  You would make the decisions about

7    whether to file things yourself.  If you wanted Mr. Gilsenan

8    to file something for you, he could help you with that.  If

9    you wanted to file it yourself, that would be your decision.

10   And it's tricky doing so, so I think you might want -- need

11   some advice about at least how to do it yourself, if you're

12   doing it; procedurally, just about how you file something.

13   Because it's not obvious, particularly when you're not here

14   and you can't just show up at the Clerk's Office with your

15   papers.

16             **THE DEFENDANT:**  All right.  So for now, I do state

17   for the record that I want to present myself.  I will

18   consider -- when I confer in private with Mr. Gilsenan and

19   we can work out those details.  As far as standby counsel, I

20   can't do that right now.  As we all know, that's probably

21   not wise.

22             **THE COURT:**  Just before we reach the bottom line

23   here, are you familiar with the rules of evidence, and do

24   you understand that the rules of evidence apply in this

25   proceeding; and that evidence can only be admitted

1    consistent with the rules of evidence; and that you, as the

2    defendant in the case, would have the right to object to

3    evidence the government sought to admit under the rules of

4    evidence, but you'd have to understand how those rules

5    operate to do that?  Do you understand that or do you

6    comprehend that?

7            **THE DEFENDANT:**  Yes, I do.  And I did not only

8    just use the PDF, I printed it out and organized it.

9            **THE COURT:**  Are those the Federal Rules of

10    Evidence that you printed out?

11            **THE DEFENDANT:**  Yes, sir, they are.

12            **THE COURT:**  Okay.  And do you understand that

13    those rules can be pretty technical?  For example, the

14    hearsay rule is a very technical rule.

15            **THE DEFENDANT:**  Yes.

16            **THE COURT:**  Do you understand there are lawyers

17    who have practiced law for many years, and they still trip

18    over things like the hearsay rule because it's complicated;

19    do you comprehend that?

20            **THE DEFENDANT:**  I comprehend.

21            **THE COURT:**  Are you familiar with the Federal

22    Rules of Criminal Procedure, and do you understand those

23    would apply here as well?

24            **THE DEFENDANT:**  Yes, I've got them here for my

25    procedure as well.

1         **THE COURT:**  And have you got the Federal Rules of

2    Criminal Procedure, the federal version?

3         **THE DEFENDANT:**  Yes, I think it's the -- it's

4    December 1st, 2020.

5         **THE COURT:**  Also, there are local rules of this

6    Court as well that are available on the website of this

7    Court.  Do you understand that those apply here as well?

8         **THE DEFENDANT:**  Yes.

9         **THE COURT:**  Do you comprehend that you will be

10   bound by those rules, and that they will not be relaxed for

11   you simply because you're representing yourself or appearing

12   on your own behalf?

13        **THE DEFENDANT:**  I comprehend that, yes.

14        **THE COURT:**  So I have to advise you, Mr. Bochene,

15   that in my view, a trained lawyer would defend you far

16   better than you'd be able to defend yourself.  That's not a

17   comment on your abilities, it's just a comment on the

18   training that a lawyer receives as well as being in a

19   different posture and not being the one who's actually

20   charged.  And in my view, a trained lawyer would be far

21   better able to represent you.  I do think that it's not wise

22   for you to represent yourself in this case.  You're not

23   familiar with the law.  I understand that you've read a lot,

24   but you don't have legal training.  You're not familiar with

25   court procedures.  I understand you've printed out the

1    rules, but that's very different from printing them out and

2    even reading them once and really being familiar with them

3    the way a lawyer is.

4        And the same thing is true with respect to the

5    rules of evidence.  You may be able to read them, but it

6    takes a lot of practice and experience to know how they

7    apply.  So I do strongly urge you not to represent yourself

8    in this case.  It is your decision to decide what you want

9    to do, but it is my advice to you that that could be

10    detrimental to you in the case, and that you would be better

11    off to have a lawyer representing you.  But it is ultimately

12    your decision of what to do.

13        I suspect that you've probably heard the

14    expression that when a lawyer represents himself, he has a

15    fool for a client.  But that captures something significant,

16    which is it's very hard to represent yourself even when

17    you're skilled as a lawyer.  And when you're not trained as

18    a lawyer, it's all that much harder.  And so as I've said

19    many times now, it is your decision to make, but I can tell

20    you that if I were in your shoes, I would not make that

21    decision.  I think it's something that could be detrimental

22    to you.

23        Do you comprehend that?

24        **THE DEFENDANT:**  I might choose a different set of

25    words.  I appreciate your words, they're well received.

**1**      However, I have to state that from my perspective, my

**2**      knowledge, there are some fundamental things I disagree with

**3**      in what you've just said.

**4**           THE COURT:  Well, let me ask Ms. Eve if there's

**5**      anything else I should inquire of Mr. Bochene before he

**6**      makes a decision?

**7**           MS. EVE:  Your Honor, the only thing that came to

**8**      mind is the fact that I know that the Court indicated to

**9**      Mr. Bochene with regard to the rules of evidence if he was

**10**     familiar with the fact that there were Federal Rules of

**11**     Evidence.  But more specifically, the Court asked about

**12**     hearsay.  I would ask the Court to ask Mr. Bochene if he

**13**     understands a specific rule that pertains to admissions by a

**14**     party, and how they can be used against him.

**15**          THE COURT:  So that's a fair point.  One of the

**16**     things that I think Ms. Eve is saying is getting at

**17**     something I think I was alluding to before, but that

**18**     ordinarily things that are said outside of court are not --

**19**     you can't admit into evidence something that's been said

**20**     outside of court.  There are a lot of exceptions to the

**21**     rule, and that's one of the complicated things about the

**22**     hearsay rule.  But one of the exceptions is for an admission

**23**     of a party opponent.

**24**          So that means that, for example, if in a

**25**     conversation with Ms. Eve about your case and how you're

1    going to proceed, or if to anybody else you say something

2    that is harmful, anyone who hears that statement, anyone you

3    may make that statement to can become a witness.  They can

4    come into court and say -- under the exception to the

5    hearsay rule, they can say Mr. Bochene told me that he

6    understood that what he was doing was wrong, by way of

7    example.  And so that's one area in which your representing

8    yourself could be very risky for that reason.

9              Do you understand that or comprehend that?

10             **THE DEFENDANT:**  I comprehend that.  And from my

11   perspective, I engaged in nothing that was criminal.  I'm

12   confident that it will be hard for the prosecution to prove

13   otherwise.  Quite contrary, you know, it seems -- I'm not

14   going to say specifically this court or the parties here on

15   this case, but there appears to be an emerging situation

16   where we're living in an age where the law is not being

17   applied equally.  For example, I'd like to enter -- see, now

18   I just had it, give me one second here.

19             Okay, so is the prosecutor aware or is the Court

20   aware that there is a video on YouTube entitled A Reporter's

21   Footage from Inside the Capitol Siege?  It's the New Yorker,

22   I don't know if you're familiar with that.  Now, the report

23   says right here, "Luke Mogelson followed Trump supporters as

24   they forced their way into the U.S. Capitol using his

25   phone's camera as a reporter's notebook."  Essentially,

1    Judge and Ms. Eve, that's exactly what I did.  And if you

2    look at the video, Luke Mogelson did it to a greater,

3    greater extent.

4            THE COURT:  Well, there will come a time for you

5    to be able to make whatever arguments you want to make.  For

6    purposes of what we're doing right now, I just want to

7    figure out whether you should be representing yourself.

8            And I do have one other question I wanted to ask

9    you, which is there have been cases in the past where people

10    have decided they want to represent themself not because

11    they really feel like they can do the best job, but because

12    they're not satisfied with their lawyer, they have a bad

13    relationship with their lawyer, there's something about the

14    particular lawyer that they have in the case.

15            So my question for you is does your decision to

16    represent yourself here have anything to do with your

17    relationship with Mr. Gilsenan or your views about

18    Mr. Gilsenan in any way?

19            THE DEFENDANT:  No.  I think the last time we were

20    together, Judge, I stated very clearly that I had nothing

21    but overarching praise for Mr. Gilsenan.

22            THE COURT:  I do recall your saying that, I just

23    wanted to be clear about that.  So if I'm understanding this

24    correctly, your decision is based not on the view of

25    Mr. Gilsenan or any other lawyer that you might have, so

1      bringing in a different lawyer wouldn't make a difference;

2      is that right?

3              **THE DEFENDANT:**  Generally, I'd have to say no.

4      For the most part, I'd have to say no.  It has nothing to do

5      with Mr. Gilsenan or any other past, present, future lawyer.

6      My issue is with members of the bar and how they're trained,

7      what they're trained in and what to do.  That's what my

8      primary foundation issue is based upon.

9              **THE COURT:**  Is there some other lawyer out there

10     who you feel could represent you in this case?

11             **THE DEFENDANT:**  Highly doubtful.  Highly doubtful.

12             **THE COURT:**  Mr. Gilsenan, is there anything else

13     you think I should ask Mr. Bochene?

14             **MR. GILSENAN:**  No, Judge.

15             **THE COURT:**  So, Mr. Bochene, in light of the

16     penalties that I've discussed with you that you could suffer

17     if you are found guilty in this case, in light of the

18     difficulties of representing yourself that we've discussed,

19     in light of your lack of legal training, do you still desire

20     to represent yourself and to give up your right, your

21     constitutional right, to be represented by a lawyer?

22             **THE DEFENDANT:**  I do want to present myself, yes.

23             **THE COURT:**  And are you knowingly and voluntarily

24     giving up your constitutional right to be represented by a

25     lawyer in this proceeding?

1          **THE DEFENDANT:**  Yes.  I would again -- I'm sorry,

2     again I would like to discuss things with Mr. Gilsenan about

3     the standby thing.  So, again, I'm not rejecting that

4     completely, I just need -- I need points of clarification to

5     make an informed choice.  I can't do that right now because

6     I have no details, Your Honor.

7          **THE COURT:**  That's fine.  I would encourage you to

8     continue to consult with Mr. Gilsenan and to make use of his

9     kind offer to be of assistance to you.

10          **THE DEFENDANT:**  I need to make informed consent.

11     I have no ability to do that right now.  But presenting

12     myself, I do not -- for the record, I do not want to be

13     represented by an attorney in this matter.

14          **THE COURT:**  And when you say presenting yourself,

15     what you mean is to act as your own lawyer; is that correct?

16          **THE DEFENDANT:**  I'm presenting myself as a man

17     here, as a living man.

18          **THE COURT:**  Right, but who is it who is going to

19     act as your lawyer in the case?  Are you going to act as

20     your lawyer in the case, is that what you're asking?  Who's

21     going to make the legal arguments --

22          **THE DEFENDANT:**  Well, Judge, I'm not here to

23     perform an act of something, I'm here to be transparent,

24     open, honest and cooperate with all procedures.  I'm not

25     here to act.  I comprehend that that's what --

1    **THE COURT:**  Well, let me use a different word.  If

2    you're stumbling over that word, let me use a different

3    word.

4    **THE DEFENDANT:**  I'm not stumbling, I know exactly

5    what it implies.  I'm not here in this --

6    **THE COURT:**  I don't think you do.  I don't think

7    the word act means to act as an actor as in a play.  I think

8    the word act, in the manner in which I was using it, means

9    to engage in those steps that are necessary to put on your

10   defense.  And that, I think, if you pick up any dictionary,

11   you will see that that is an appropriate use of the word

12   act.  And act is not -- it may mean act as an actor in a

13   play, but it also means to take certain steps, and that's

14   the way I'm using the word here, sir.

15   **THE DEFENDANT:**  Well, you know, a lot of legal

16   books and documents, it's quite self-evident that it uses

17   act, perform.  It's all -- it's rife with these terms,

18   Judge.

19   **THE COURT:**  So I need to understand for purposes

20   of today, though -- when you say present yourself, I need to

21   understand more than that you're just going to stand up and

22   appear in court.  What I need to understand is who it is

23   who's going to make -- who you, given your rights, want to

24   make legal arguments, factual arguments, present evidence,

25   present -- if you decide to present evidence, motions, who

1   is going to take on those responsibilities in your view, who

2   should take on those responsibilities in your view?

3            THE DEFENDANT:  I, Eric Bochene, a man.

4            THE COURT:  Is your decision entirely voluntary?

5            THE DEFENDANT:  Yes, it is.

6            THE COURT:  Do you feel as though there's anything

7   else that you would like to ask me or Mr. Gilsenan before

8   making an absolutely final decision about whether you will

9   serve as your own attorney in this proceeding?

10            THE DEFENDANT:  I'm not here -- I mean, we should

11   back up then.  I'm not here involved in these matters

12   voluntarily.  The only reason I'm presenting myself is under

13   duress.  I have no other choice, correct?  I mean, is there

14   anyone who disagrees with that?

15            THE COURT:  Well, you do have a choice.  You have

16   a choice to have a lawyer who would serve as your counsel in

17   these proceedings.  So that's your choice.  Your choice is

18   to have a lawyer serve as your counsel or to serve as your

19   own counsel in the case.  The question for you is which of

20   those two would you like to do?

21            THE DEFENDANT:  As I stated, I'm going to present

22   myself for these matters under duress as a man.  I can't

23   give you any other --

24            THE COURT:  Mr. Bochene, I hope you appreciate

25   this -- and this may present some of the cautions about

1    being your own lawyer.  I can't accept that.  I can't grant

2    your request under those circumstances, because you're not

3    answering my question in an adequate fashion.  Saying that

4    you will present yourself under duress does not answer the

5    question that I am putting to you, which is you have a right

6    to be represented -- you have a constitutional right to have

7    a lawyer proceed in this case on your behalf.  And you also

8    have a constitutional right to make a knowing and voluntary

9    decision to waive that right and to proceed as your own

10   lawyer in the case.  I need to know which of those two you

11   want to do.  It's not enough for me to hear that you will

12   present yourself under duress, because that doesn't answer

13   the question.

14          **THE DEFENDANT:**  Okay, I'm proceeding to present

15   myself.  If you need to put -- I know you use terms pro se,

16   pro per -- I'm not sure exactly what forms you use.  I

17   cannot prevent you or demand --

18          **THE COURT:**  To proceed as your lawyer, how does

19   that sound?

20          **THE DEFENDANT:**  I'll proceed as my own lawyer.

21          **THE COURT:**  That's the decision you'd like to

22   make?

23          **THE DEFENDANT:**  Uh-huh.

24          **THE COURT:**  Is that -- I just need also a verbal

25   answer.  Is that your decision?

1          **THE DEFENDANT:**  Yes, yes.

2          **THE COURT:**  Are you making the decision knowingly

3    and voluntarily?

4          **THE DEFENDANT:**  Knowingly and voluntarily.

5          **THE COURT:**  Okay.  So, Mr. Bochene, as I noted,

6    you do have a constitutional right to represent yourself or

7    to serve as your own lawyer.  The Supreme Court has

8    required, however, that in order to represent yourself, you

9    must knowingly and intelligently forgo the assistance of

10   counsel.  The D.C. Circuit explained that under that Supreme

11   Court decision called Faretta v. California, a defendant has

12   a constitutional right to proceed without counsel guaranteed

13   by the Sixth Amendment when the defendant unequivocally

14   elects to do so, and where the election is voluntarily,

15   knowingly and intelligent.

16         So let me ask you once again, do you think that

17   standard's satisfied here?

18         **THE DEFENDANT:**  Yes, I do.

19         **THE COURT:**  Well, based on your representations to

20   me today, Mr. Bochene, I find that you have satisfied these

21   requirements.  I find that your decision to proceed without

22   counsel is unequivocal, and that you have made the decision

23   voluntarily, knowingly and intelligently.  Therefore, I'll

24   permit you to represent yourself.  I'm going to appoint

25   Mr. Gilsenan to be available to you to serve as standby

1    counsel to assist you if needed; and if circumstances arise,

2    to replace you if I determine during the trial that you can

3    no longer or should no longer be allowed to proceed pro se

4    in the case.  So I think that addresses the issue with

5    respect to representation.

6            Let me ask Ms. Eve in light of where we are now,

7    what she would suggest for next steps in the case.  Where

8    are we on discovery, and what do you propose we do next?

9            **MS. EVE:**  Your Honor, as the Court directed, the

10   government supplied Mr. Gilsenan with the discovery.

11           **THE COURT:**  Is that all of it at this point or is

12   there more coming?

13           **MS. EVE:**  Well, with respect to this defendant, as

14   opposed to the entire Capitol riots prosecution, the

15   government has met its discovery obligations with respect to

16   solely this defendant.

17           **THE COURT:**  Now, I want to be clear, because I

18   know what you mean by that, but I'm not sure Mr. Bochene

19   does.  So let me be clear for the record of what that means

20   as I understand it, and you can correct me if this isn't

21   right, Ms. Eve.  You've provided to Mr. Bochene the evidence

22   you're aware of that identifies him in particular

23   photographs, video, interview reports and things of that

24   nature that identify Mr. Bochene personally that you're

25   aware of.  But there is a very, very large mass of data and

1    information that was collected on that day, and there are

2    many hundreds of hours of film that were collected.  And I

3    think the government can't guarantee to any single

4    defendant, for example, that they don't appear in some of

5    this other video that relates more generally to the events

6    of that day.  And the government has set up an extensive

7    process for reviewing that additional material and finding

8    ways of making that available to the defense.  And it's

9    possible, Mr. Bochene, in some of that material there is

10   something that you might deem helpful to your defense.

11          So Ms. Eve has provided you at this point with

12   what she has.  But there still is a great deal of

13   information out there that may or may not contain

14   information that bears on your case.

15          Is that correct, Ms. Eve?

16          **MS. EVE:**  It is, Your Honor.

17          **THE COURT:**  So what do you suggest as next steps?

18          **MS. EVE:**  Well, what the government had intended

19   to do after supplying the discovery to the defense was to

20   then engage with respect to plea negotiations.  I don't know

21   if the Court wants me to directly engage in those

22   discussions with just Mr. Bochene or Mr. Bochene and

23   Mr. Gilsenan.  If that's the case, the government is

24   prepared to start those conversations next week after I

25   return from vacation.  Otherwise, I -- in addition to that,

1   I would say the additional step would be to schedule another

2   status conference hearing, however the Court wants to

3   characterize it, to enable the parties to inform the Court

4   of where we are at that point in time; and that I would

5   suggest a date sometime after perhaps the last week of

6   September.

7            **THE COURT:**  Mr. Bochene, how do you propose that

8   we proceed at this point?

9            **THE DEFENDANT:**  I don't know if the Court is aware

10  that I have a -- how do I put this in the most simple terms.

11  My wife and my daughter are in Shanghai, China.  I've not

12  seen them for two years now, Judge, because of this COVID

13  stuff and now this.  I feel like I'm being trespassed being

14  kept away from my family over this.  That's very important

15  to me and something of high contention for my part, as I

16  think is understandable.  So settling these matters is of

17  the utmost importance to me, Judge.

18            And as the statement from the FBI read, that I was

19  willing to cooperate with the eyewitness evidence I saw of

20  actually violent crimes.  But for some reason, the -- and

21  I'm not blaming this Court, but the FBI seems to have no

22  interest in that, which is a bit strange to me.

23            **THE COURT:**  So, Mr. Bochene, I don't know if there

24  are motions you want to file in the case, if you want some

25  time to review the discovery.  Here's one proposal, let me

1    put this out there and you can tell me what you think about

2    it.  We could schedule a time to come back -- maybe by video

3    if you want to do it that way, or we can do it in-person if

4    you want.  But schedule a time to come back after you've had

5    a chance to review the discovery.  I'm not going to get

6    involved at all in any plea negotiations, I'm not allowed to

7    under the rules.  That's between you and Ms. Eve and

8    Mr. Gilsenan, if you'd like to include him in that process.

9    That's up to you, though, since you're representing yourself

10    now as to whether you decide you want his assistance in

11    that, if you want to have those discussions.

12            I would encourage you, again, to make sure you're

13    not saying anything that could be incriminating or could be

14    used against you, to at least get his advice about any of

15    that.  But that's up to you.  The Court doesn't get involved

16    in plea negotiations.  But you should then maybe have a

17    discussion with Ms. Eve -- again, with Mr. Gilsenan's

18    assistance if you'd like, about setting a schedule for any

19    motions you want to file.  The government may have motions

20    it wants to file as well.  We can come back in six weeks or

21    so, something like that, after had you've had a chance to

22    review the discovery, talk to the government if you want to

23    and come up with a schedule.  And then everyone can propose

24    to me what they want the schedule to be going forward,

25    whether it's just setting a trial date or whether it's

1    setting a schedule for motions practice at that point in the

2    process.

3              So, Mr. Bochene, what do you think of that

4    proposal?

5              **THE DEFENDANT:**  I've stated from day one when I

6    talked with the FBI that I'm willing to cooperate.  I harmed

7    no man or woman, I'm willing to cooperate.  I want truth,

8    and if anybody did engage in actual crimes that harmed men

9    and women or property, I'm willing and have always been

10   willing to help justice be met.  I've said that from day

11   one, Your Honor.

12             **THE COURT:**  So what if we were to come back then

13   on -- I'm starting a lengthy trial in mid October, but I'm

14   going to try to carve out Fridays for hearings.  What if we

15   came back on Friday, October 22nd?  And I'll defer to you

16   whether you want to do this in-person or by video.  When we

17   come back on that day, you can tell me --

18             **THE DEFENDANT:**  22 October?

19             **THE COURT:**  Yes, that's what I was proposing, 22

20   October.  Come back on that day, and you can let me know

21   whether you want to continue any discussions you're having

22   with the government at that point -- it's up to you, none of

23   my business.  And we can also discuss schedule going forward

24   or motions or setting a trial date.  And that will also give

25   you a chance to review the discovery before then.

1          Does that make sense to you?

2          **THE DEFENDANT:**  It does.  Can I just ask a

3     simple -- and I'm not sure if I should direct it to you,

4     Judge, and/or Ms. Eve?

5          **THE COURT:**  Go ahead.

6          **THE DEFENDANT:**  It's a simple yes/no question -- I

7     think it's very simple.  So my simple question is:  Was the

8     bond used as a summons and viewed as an agreement or

9     contract that I consented to to attend hearings?  Is that

10    the foundational --

11         **THE COURT:**  Part of the conditions of your

12    pretrial release is that you do attend -- is that you do

13    appear when required by the Court for court proceedings.

14    That is a condition of your pretrial release, if that's your

15    question.

16         **THE DEFENDANT:**  So the bond is essentially serving

17    as the summons?  Because I've never really received a

18    properly served summons, the only thing I have is the bond.

19         **THE COURT:**  I think that the initiation -- and

20    again, this is -- I can't be the one providing you with the

21    legal advice, and perhaps you should talk to Mr. Gilsenan

22    about this afterwards.  What I can tell you is the

23    commencement of the legal proceedings in the Court are

24    triggered by your arrest and arraignment.  And we've had the

25    arraignment in this case.  So if your question is what

1    initiates the proceedings in this Court, there's a filing of

2    an information, there's an arraignment on that information

3    and that's what commences the proceedings.

4              THE DEFENDANT:  Do you mind, Judge, if I may pose

5    that question to Ms. Eve?

6              THE COURT:  Which question is that?

7              THE DEFENDANT:  Just was the bond used as my -- as

8    a or my summons and viewed as an agreement or contract that

9    I consented into attending hearings?  I mean, is that

10   what --

11             THE COURT:  I think I've addressed the question at

12   this point.  I'm not sure there's anything else for

13   Ms. Eve -- you're welcome to have any conversations with her

14   outside of these proceedings.  And also you can ask

15   Mr. Gilsenan if you have a question about something like

16   that.

17             So, Ms. Eve, does October 22nd work for you as

18   well?

19             MS. EVE:  It does, Your Honor.  I checked my

20   calendar, I'm available.

21             THE COURT:  Mr. Bochene, would you like to do that

22   in-person or do you want to do it by video?  If you did it

23   in-person, you'd have to come to D.C.

24             THE DEFENDANT:  My resources have been extremely

25   limited with all of this right now, so I'm still okay with

1    teleconference, video, whatever we're calling it here.

2                 **THE COURT:**  Well, the Clerk of the Court will

3    provide you with the information for -- I guess the answer

4    is it will be the same Zoom link as this time.  So if you

5    have the Zoom link, it would be the same one.

6                 Kristin, can we pull up a time on the 22nd for a

7    further status?

8                 **DEPUTY CLERK:**  Yes, Your Honor, 3:45.

9                 **THE COURT:**  Does that work for you, Mr. Bochene?

10                **THE DEFENDANT:**  I was hoping we could stick to the

11   14:00.

12                **THE COURT:**  Well, I have other matters on my

13   calendar unfortunately.

14                **THE DEFENDANT:**  What was that time again?

15                **THE COURT:**  3:45.

16                **MR. GILSENAN:**  Judge, I want to let the Court know

17   I'm not available on that day.  I don't know if the Court

18   wants me to attend or Mr. Bochene wants me to attend.

19                **THE COURT:**  The 22nd you're not available, huh?

20                **MR. GILSENAN:**  No, I have a sentencing in-person

21   in Albany.

22                **THE COURT:**  I see.  Could you sometime that day

23   participate by Zoom from Albany?

24                **MR. GILSENAN:**  I think I could.  I presume I

25   could.

1          THE COURT:  What time is your sentencing?

2          MR. GILSENAN:  The sentencing is at 12:30.

3          THE COURT:  Why don't you tell us what time you

4     think would be one that is most likely to -- or we could do

5     it on the 29th if everyone else would prefer.

6          MR. GILSENAN:  The 29th I am for sure free.

7          THE COURT:  Mr. Bochene, do you have a preference

8     between those?

9          THE DEFENDANT:  Excuse me, I was coughing.  Can

10    you repeat that for me?

11         THE COURT:  Mr. Gilsenan has some scheduling

12    issues on the 22nd.

13         THE DEFENDANT:  I heard that.

14         THE COURT:  I was asking whether the 29th would be

15    acceptable to you instead?

16         THE DEFENDANT:  Okay.  So now 29 October, and

17    time?

18         THE COURT:  Let me ask Kristin.

19         DEPUTY CLERK:  Yes, Your Honor, 2:00 p.m. as long

20    as we don't go over an hour.  You have an in-person matter

21    after that.

22         THE COURT:  2:00 p.m. on October 29th?

23         THE DEFENDANT:  Okay.

24         THE COURT:  Ms. Eve?

25         MS. EVE:  I'm sorry, Your Honor, I was just

1    checking my calendar.  I am available on the 29th as well.

2         **THE COURT:**  Then I'm going to put the matter down

3    for a further status on October 29th at 2:00 p.m. by video,

4    and we'll use the same Zoom link for purposes of that status

5    conference.

6         Mr. Bochene, I'm sure by now you've heard a fair

7    amount about the Speedy Trial Act which guarantees your

8    right to go to trial within 70 days of the time that you're

9    arrested or charged.  There are various exclusions and

10   exceptions.

11        I guess my question for you is:  Would you agree

12   to exclude time between now and October 29th?

13        **THE DEFENDANT:**  No.

14        **THE COURT:**  What's that?

15        **THE DEFENDANT:**  No, I'm sticking with my Speedy

16   Trial.  If we're going to proceed -- if the prosecutor wants

17   to proceed to trial, then I do not waive that.

18        **THE COURT:**  Well, so let me ask you, when would

19   you like to go to trial?

20        **THE DEFENDANT:**  Well, again, as I mentioned -- say

21   again?

22        **THE COURT:**  When do you feel as though you'll be

23   ready to go to trial?  You'll need to review the evidence

24   and also make any motions you want to make before we go to

25   trial.  So when do you feel as though you can go to trial?

1      **THE DEFENDANT:**  We're now in September.  Before

2    October.  I have very important matters to attend to with my

3    family back home.  I know the prosecution might view it as a

4    flight risk, but I have a legal, lawful home in Shanghai.  I

5    know it's -- there's nothing I can do about that.

6      **THE COURT:**  There may be something you can do

7    about that, that's a separate question.  If you have

8    family -- I don't know if you're talking about going to

9    Shanghai to live there permanently or whether you're talking

10   about visiting family there.  If you're talking about

11   visiting family there, what I would ask you to do is to

12   confer with Ms. Eve about that and see what her position is.

13   And then she can also check with pretrial services and let

14   me know.  It's possible that I could be persuaded to modify

15   the terms of your pretrial release to permit you to take a

16   visit to see your family in Shanghai under appropriate

17   conditions.  But I'd want to know what everybody thinks

18   about that before I made a decision on that question.

19     **THE DEFENDANT:**  Your Honor, can I just add

20   something to that as well?

21     **THE COURT:**  Yes.

22     **THE DEFENDANT:**  Because it is highly related.  The

23   FBI still has my technological -- my computers and hard

24   drives that are hindering me in many ways as well.  I think

25   they've had it for a long enough time.  I'd also like to get

1   that returned to me as soon as possible.

2          **THE COURT:**  I don't know what the status is on

3   that.  You can confer with Ms. Eve about that as well.  So

4   what I'm going to do then is I'm going to put this down for

5   the status on the 29th, but you should confer with Ms. Eve

6   about a trial date.  But before we can actually have a trial

7   in the case, the government has to comply with its

8   obligations of providing the discovery.  And it's

9   represented today that it's provided most of the discovery,

10  but it's possible there's still something else out there

11  that could be relevant to your case.  We can't go to trial

12  until you have all the discovery, and also until you've had

13  a time to file any motions you want.

14          So talk to Ms. Eve about trial dates.  I would be

15  open to setting a trial date.  I'll set it as soon as you

16  want, a trial date.  But I just want to make sure you've got

17  the discovery you're entitled to before we actually go to

18  trial, and that you've had a chance to file whatever motions

19  you want to file.  I'm happy to set an early trial date for

20  this matter.

21          I guess one other question is if you want to

22  actually -- I don't know whether -- Ms. Eve, is there a

23  right to a jury trial here or is this a bench trial because

24  it's a misdemeanor?

25          **MS. EVE:**  I don't know the answer to that

1    question, Your Honor.

2           **THE COURT:**  Well, you should take a look at that

3    and let me know.

4           **MS. EVE:**  I will.

5           **THE COURT:**  Because if it's a bench trial, that

6    gives me even greater flexibility to set something promptly.

7           **MS. EVE:**  Yes, sir.

8           **THE COURT:**  So I am going to go ahead and put this

9    down for a further status on the 29th.  If before then you

10   want to file a motion proposing a trial date, you're welcome

11   to do so.  But I do want to make sure you have the evidence

12   you're entitled to before you do that.  And I am going to

13   exclude time between now and October 29th under the ends of

14   justice exception to the Speedy Trial Act.  The Court

15   concludes that the continuance is in the interests of

16   justice, and that those interests outweigh the best

17   interests of the public and the defendant in a speedy trial.

18   And in particular, the discovery, although hopefully largely

19   complete, is not complete at this point, and there still is

20   a mountain of evidence that the government has to go through

21   to see if there is any other evidence that could relate to

22   Mr. Bochene.  And that has to happen before we can go to

23   trial.

24          In addition, Mr. Bochene needs time to review the

25   Federal Rules of Evidence, the Federal Rules of Criminal

1    Procedure; to get up to speed with his case and to review

2    the discovery that's been provided to him; and to have any

3    discussions he wants to have with the government with

4    respect to a disposition.  So for all those reasons, as well

5    as the ongoing the pandemic, the Court concludes that it is

6    appropriate to exclude time between now and October 29th,

7    2021.  And the Court further concludes that the interest in

8    the continuance outweigh the best interests of the public

9    and the defendant in a Speedy Trial.

10         Ms. Eve, is there anything else you wanted to

11   raise today?

12         **MS. EVE:**  No, sir.

13         **THE COURT:**  Mr. Bochene, anything else you wanted

14   to raise with the Court today?  You're welcome to have

15   separate conversations with Mr. Gilsenan --

16         **THE DEFENDANT:**  Just a very simple question

17   relating to those last questions.  I'd ask Ms. Eve if she

18   has the power to communicate with the FBI to get my property

19   back, and then we can discuss my situation with family.  Are

20   you saying, Judge, that I should --

21         **THE COURT:**  Do you have Ms. Eve's contact

22   information?  Mr. Gilsenan can give that to you, but you

23   should have conversations with Ms. Eve about those

24   questions.  And then if there's a motion you need to file

25   with the Court, talk to Mr. Gilsenan about how to file a

1    motion with the Court, and he can tell you what you need to

2    do to file a motion if you need to.

3         **THE DEFENDANT:**  Yeah, most of my motions that I've

4    sent have been notarized and certified mail.  I've got

5    that -- I understand that aspect.  Obviously if Ms. Eve and

6    the Court -- to expedite things, if they could receive the

7    e-mail and wait for the actual hard copy, but to get things

8    on the record and moving.

9         **THE COURT:**  For me, I need something on the

10   docket, and you need to comply with those rules with respect

11   to how you file things in court for it to be presented to

12   me.  But talk to Mr. Gilsenan, and I think he can probably

13   give you advice about how to go ahead and file a motion with

14   the Court, if there's something you want to raise with the

15   Court.

16        **THE DEFENDANT:**  Okay.

17        **MR. GILSENAN:**  Judge?

18        **THE COURT:**  Yes, Mr. Gilsenan.

19        **MR. GILSENAN:**  I apologize, Judge.  I don't know

20   what the local rules are -- and I can look into this, but is

21   Mr. Bochene able to create an ECF account or a PACER account

22   himself?

23        **THE COURT:**  I believe that he needs to file a

24   request or a motion to do so.  There are materials you can

25   hopefully point him to in our local rules about what he has

1    to attest to in order to be granted leave to have access to

2    ECF.  He needs to indicate that he's reviewed the rules and

3    procedures, that he's agreeing to waive his right to seek

4    paper copies, and that he has the right computer technology

5    available in order to do so.  But it's in the local rules,

6    so perhaps you can just point him to that.  And then he has

7    to just file a request or a motion for leave to have access

8    to ECF.

9            **MR. GILSENAN:**  Thank you, Judge.

10           **THE COURT:**  If he follows that rule, I'll just

11   grant that request.

12           **MR. GILSENAN:**  Thank you.

13           **THE COURT:**  All right.  Well, thank you all.  I

14   will see you again on October 29th.  And if anything else

15   comes up before then, you can file a motion.  It sounds like

16   we may need to set an early trial date in this case, and I'm

17   fine doing that.  Thank you all, have a good day.

18           (Proceedings adjourned at 3:15 p.m.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3                 I, **Jeff Hook, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                      **PLEASE NOTE:**   This hearing occurred by

8    videoconference and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13       August 21, 2023

14            **DATE**                          **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**$**

$10 [2]   9/22 10/8
8/22 9/6
$100,000 [3]   8/12
$25 [3]   8/10 8/17
9/4
$5,000 [2]   9/24
10/10

**0**

0418 [1]   1/4

**1**

12 [4]   7/4 8/11
8/20 9/5
12:30 [1]   39/2
13202 [1]   1/18
14:00 [1]   38/11
1752 [4]   5/10 5/24
6/2 6/5
18 [4]   5/10 5/24
6/2 6/4
19106 [1]   1/15
1:21-cr-0418 [1]
1/4
1st [1]   20/4

**2**

20001 [1]   1/25
2020 [1]   20/4
2021 [2]   1/6 44/7
21-418 [1]   2/2
22 [2]   35/18 35/19
22nd [5]   35/15
37/17 38/6 38/19
39/12
29 [1]   39/16
29th [12]   39/5 39/6
39/14 39/22 40/1
40/3 40/12 42/5
43/9 43/13 44/6
46/14
2:00 p.m [3]   39/19
39/22 40/3
2:11 [1]   1/7

**3**

333 [1]   1/24
3:15 p.m [1]   46/18
3:45 [2]   38/8 38/15
3rd [1]   1/17

**4**

40 [3]   6/6 6/9 6/13
418 [1]   2/2
4700-C [1]   1/24

**5**

5104 [3]   6/7 6/9
6/14

**6**

615 [1]   1/14
6th [1]   10/25

**7**

70 [1]   40/8

**A**

abilities [1]   20/17

ability [1]   26/11
able [5]   20/16
20/21 21/5 24/5
45/21
above [1]   47/5
above-entitled [1]
47/5
absolutely [1]   28/8
accept [1]   29/1
acceptable [1]
39/15
access [2]   46/1
46/7
account [2]   45/21
45/21
accredited [1]   4/6
act [14]   26/15
26/19 26/19 26/23
26/25 27/7 27/7
27/8 27/12 27/12
27/12 27/17 40/7
43/14
action [2]   1/4 2/2
actor [2]   27/7
27/12
actual [2]   35/8
45/7
actually [8]   2/25
11/1 17/1 20/19
33/20 42/6 42/17
42/22
add [1]   41/19
added [1]   11/3
addition [2]   32/25
43/24
additional [5]   7/20
8/3 8/5 32/7 33/1
address [2]   16/2
16/15
addressed [1]   37/11
addresses [1]   31/4
adequate [1]   29/3
adjourned [1]   46/18
admission [2]   12/4
22/22
admissions [1]
22/13
admit [5]   17/2 17/3
17/4 19/3 22/19
admitted [1]   18/25
advance [1]   16/20
advice [11]   14/11
15/14 15/19 16/8
17/4 17/7 18/11
21/9 34/14 36/21
45/13
advise [2]   15/12
20/14
advised [1]   13/4
affirmative [1]
3/21
afterwards [1]
36/22
again [14]   7/23
8/14 14/2 26/1 26/2
26/3 30/16 34/12
34/17 36/20 38/14
40/20 40/21 46/14
against [7]   7/3
7/16 12/4 12/10

14/18 22/14 34/14
age [1]   23/16
agent [2]   11/7
11/12
ago [2]   13/16 13/16
agree [1]   40/11
agreeing [1]   46/3
agreement [3]   15/22
36/8 37/8
ahead [5]   5/23
11/22 36/5 43/8
45/13
Albany [2]   38/21
38/23
allowed [2]   31/3
34/6
allowing [1]   17/2
alluding [1]   22/17
along [1]   5/16
although [1]   43/18
always [4]   8/2
10/23 11/5 35/9
Amendment [1]   30/13
AMERICA [2]   1/3 2/3
amount [1]   40/7
and/or [1]   36/4
ANITA [3]   1/13 2/4
13/18
apologize [1]   45/19
appear [5]   2/12 3/3
27/22 32/4 36/13
APPEARANCES [1]
1/12
appearing [2]   2/4
20/11
appears [1]   23/15
applied [1]   23/17
apply [4]   18/24
19/23 20/7 21/7
appoint [1]   30/24
appreciate [2]
21/25 28/24
appropriate [4]
3/12 27/11 41/16
44/6
area [1]   23/7
argument [1]   13/5
arguments [5]   13/2
24/5 26/21 27/24
27/24
arise [1]   31/1
arraignment [3]
36/24 36/25 37/2
arrange [1]   3/4
arrest [1]   36/24
arrested [1]   40/9
aspect [1]   45/5
assessment [5]   8/10
8/17 9/4 9/21 10/8
assist [1]   31/1
assistance [5]
16/13 26/9 30/9
34/10 34/18
attend [5]   36/9
36/12 38/18 38/18
41/2
attending [1]   37/9
attention [1]   11/18
attest [1]   46/1
attorney [3]   14/5

26/13 28/9
attorney-client [1]
14/5
available [9]   16/14
20/6 30/25 32/8
37/20 38/17 38/19
40/1 46/5
Avenue [1]   1/24
avoid [1]   13/4
aware [13]   8/6 8/7
9/1 9/17 9/19 10/3
10/5 12/12 23/19
23/20 31/22 31/25
33/9
away [1]   33/14

**B**

back [13]   13/16
13/16 17/10 28/11
34/2 34/4 34/20
35/12 35/15 35/17
35/20 41/3 44/19
bad [1]   24/12
Bankruptcy [1]   1/23
bar [3]   12/14 12/18
25/6
based [5]   13/3 13/5
24/24 25/8 30/19
basis [1]   7/21
bears [1]   32/14
become [2]   14/17
23/3
behalf [2]   20/12
29/7
bench [2]   42/23
43/5
best [3]   24/11
43/16 44/8
better [5]   12/13
12/14 20/16 20/21
21/10
big [1]   4/23
Bill [1]   4/13
bit [2]   3/1 33/22
Black's [3]   4/14
4/15 4/16
blaming [1]   33/21
BOCHENE [46]   1/6
2/3 2/7 2/12 2/13
2/16 2/23 3/15 3/16
4/4 4/5 13/21 13/24
14/1 16/6 16/8
16/11 20/14 22/5
22/9 22/12 23/5
25/13 25/15 28/3
28/24 30/5 30/20
31/18 31/21 31/24
32/9 32/22 32/22
33/7 33/23 35/3
37/21 38/9 38/18
39/7 40/6 43/22
43/24 44/13 45/21
Bochene's [2]   2/18
2/19
bond [4]   36/8 36/16
36/18 37/7
books [1]   27/16
bottom [1]   18/22
bound [4]   12/22
12/25 13/1 20/10

**B**

box [3]    17/9 17/12
17/16
bring [3]    7/20 8/3
11/18
bringing [3]    8/5
11/3 25/1
brought [2]    11/1
11/17
building [6]    5/9
6/1 6/4 6/6 6/8
6/16
business [1]    35/23

**C**

calendar [3]    37/20
38/13 40/1
California [1]
30/11
call [1]    4/7
called [1]    30/11
calling [1]    38/1
came [3]    8/4 22/7
35/15
camera [1]    23/25
can [47]    3/4 5/12
8/14 12/17 13/9
15/19 16/21 17/10
18/19 18/25 19/13
21/19 22/14 23/3
23/3 23/5 24/11
31/2 31/20 34/1
34/3 34/20 34/23
35/17 35/20 35/23
36/2 36/22 37/14
38/6 39/9 40/25
41/5 41/6 41/13
41/19 42/3 42/6
43/22 44/19 44/22
45/1 45/12 45/20
45/24 46/6 46/15
capacity [2]    16/4
16/10
Capitol [6]    6/6 6/8
6/16 23/21 23/24
31/14
captures [1]    21/15
carrying [1]    11/4
carve [1]    35/14
case [40]    2/9 5/4
5/4 6/21 7/6 7/17
8/2 10/24 11/5 12/3
12/5 12/23 13/1
14/18 14/21 15/15
19/2 20/22 21/8
21/10 22/25 23/15
24/14 25/10 25/17
26/19 26/20 28/19
29/7 29/10 31/4
31/7 32/14 32/23
33/24 36/25 42/7
42/11 44/1 46/16
cases [3]    10/25
11/2 24/9
cautions [1]    28/25
certain [1]    27/13
certainly [1]    3/8
certified [1]    45/4
certify [1]    47/4

chance [5]    2/13
34/5 34/21 35/25
42/18
change [1]    7/20
characterize [1]
33/3
charge [1]    6/13
charged [9]    5/8 5/9
7/5 8/8 9/2 9/20
10/6 20/20 40/9
charges [14]    5/25
6/3 6/5 6/7 7/16
7/20 8/4 8/5 10/24
11/1 11/3 11/4
11/15 13/19
charging [1]    7/3
check [1]    41/13
checked [1]    37/19
checking [1]    40/1
Chestnut [1]    1/14
China [1]    33/11
choice [6]    26/5
28/13 28/15 28/16
28/17 28/17
choose [1]    21/24
Circuit [1]    30/10
circumstance [1]
16/21
circumstances [2]
29/2 31/1
civil [1]    5/4
clarification [1]
26/4
class [4]    8/9 9/3
9/20 10/7
clear [5]    4/3 5/19
24/23 31/17 31/19
clearly [1]    24/20
Clerk [1]    38/2
Clerk's [1]    18/14
client [2]    14/5
21/15
Clinton [1]    1/17
collected [2]    32/1
32/2
COLUMBIA [1]    1/1
columns [1]    6/24
coming [1]    31/12
commencement [1]
36/23
commences [1]    37/3
comment [2]    20/17
20/17
communicate [1]
44/18
communications [1]
13/17
Communitarian [1]
11/10
Communitarians [1]
11/11
complete [2]    43/19
43/19
completely [1]    26/4
complicated [2]
19/18 22/21
comply [5]    12/22
12/23 13/10 42/7
45/10
components [1]

12/12
comprehend [19]
7/25 8/24 10/14
10/15 10/17 11/6
12/11 13/15 14/22
15/1 19/6 19/19
19/20 20/9 20/13
21/23 23/9 23/10
26/25
comprehension [1]
6/11
computer [1]    46/4
computers [1]    41/23
conceivably [1]
14/17
concerns [1]    16/15
conclude [1]    9/11
concluded [1]    7/21
concludes [4]    3/11
43/15 44/5 44/7
condition [2]    16/17
36/14
conditions [3]    12/6
36/11 41/17
conduct [5]    6/3 6/6
6/14 6/18 12/23
confer [5]    15/6
18/18 41/12 42/3
42/5
conference [3]    1/10
33/2 40/5
conferred [2]    2/16
confidence [1]    14/5
confident [1]    23/12
confidential [1]
14/14
confirm [1]    12/19
consecutive [1]
10/19
consecutively [1]
9/12
consent [1]    26/10
consented [2]    36/9
37/9
consider [1]    18/18
consisted [1]    18/4
consistent [2]    17/7
19/1
constitute [1]    12/4
constitution [3]
1/24 4/12 4/13
constitutional [7]
2/8 25/21 25/24
29/6 29/8 30/6
30/12
consult [2]    5/21
26/8
consulted [1]    4/17
contact [1]    44/21
contain [1]    32/13
contention [1]
33/15
continuance [2]
43/15 44/8
continue [2]    26/8
35/21
contract [3]    16/18
36/9 37/8
contrary [1]    23/13
conversation [1]

22/25
conversations [4]
32/24 37/13 44/15
44/23
cooperate [4]    26/24
33/19 35/6 35/7
copies [1]    46/4
copy [1]    45/7
Cornell [3]    4/18
4/19 4/21
correctly [1]    24/24
coughing [1]    39/9
counsel [15]    1/17
2/9 2/13 15/18
15/24 16/3 16/6
18/19 28/16 28/18
28/19 30/10 30/12
30/22 31/1
count [12]    5/8 5/11
5/25 6/2 6/5 6/7
8/8 9/2 9/9 9/20
9/25 10/6
counts [4]    7/16
9/14 9/15 10/20
couple [2]    3/17
11/8
court [56]
courts [3]    1/23
4/19 4/19
COVID [1]    33/12
cr [1]    1/4
create [1]    45/21
crime [4]    8/8 9/2
9/20 10/6
crimes [5]    5/8 7/5
10/18 33/20 35/8
criminal [9]    1/4
2/2 5/4 8/2 11/5
19/22 20/2 23/11
43/25
crucial [1]    12/12

**D**

D.C [2]    30/10 37/23
data [1]    31/25
date [10]    33/5
34/25 35/24 42/6
42/15 42/16 42/19
43/10 46/16 47/14
dates [1]    42/14
daughter [1]    33/11
day [9]    32/1 32/6
35/5 35/10 35/17
35/20 38/17 38/22
46/17
days [2]    3/17 40/8
DC [2]    1/5 1/25
deal [2]    13/19
32/12
decades [1]    4/11
December [1]    20/4
December 1st [1]
20/4
decide [6]    10/24
15/11 16/23 21/8
27/25 34/10
decided [1]    24/10
deciding [1]    17/13
decision [24]    2/14
3/14 3/18 15/1

**D**

decision... [20]
17/13 17/15 18/9
21/8 21/12 21/19
21/21 22/6 24/15
24/24 28/4 28/8
29/9 29/21 29/25
30/2 30/11 30/21
30/22 41/18
decisions [1]  18/6
deem [1]  32/10
defend [2]  20/15
20/16
defendant [12]  1/7
1/16 2/3 2/5 19/2
30/11 30/13 31/13
31/16 32/4 43/17
44/9
defense [4]  27/10
32/8 32/10 32/19
defer [1]  35/15
definitely [1]  15/5
definition [1]
15/23
demand [1]  29/17
demonstrating [2]
6/8 6/15
desire [1]  25/19
details [2]  18/19
26/6
determine [1]  31/2
detrimental [2]
21/10 21/21
dictionary [4]  4/14
4/15 4/16 27/10
difference [1]  25/1
differences [1]
11/25
different [7]  16/25
20/19 21/1 21/24
25/1 27/1 27/2
difficulties [2]
14/12 25/18
direct [3]  9/7
10/11 36/3
directed [1]  31/9
directly [2]  7/11
32/21
disagree [1]  22/2
disagrees [1]  28/14
discovery [15]  7/10
31/8 31/10 31/15
32/19 33/25 34/5
34/22 35/25 42/8
42/9 42/12 42/17
43/18 44/2
discrepancies [1]
5/1
discrepancy [1]  7/1
discuss [4]  16/24
26/2 35/23 44/19
discussed [2]  25/16
25/18
discussing [2]  2/7
14/8
discussion [1]
34/17
discussions [6]
12/21 14/15 32/22

34/11 35/21 44/3
dismiss [1]  18/4
disorderly [4]  6/3
6/6 6/14 6/18
disposition [1]
44/4
disruptive [1]  6/3
DISTRICT [4]  1/1
1/1 1/11 1/23
docket [2]  7/4
45/10
document [6]  6/12
6/15 6/19 7/3 7/5
11/16
documents [1]  27/16
done [2]  4/8 13/6
doubt [1]  5/18
doubtful [2]  25/11
25/11
down [4]  11/13 40/2
42/4 43/9
drives [1]  41/24
duly [1]  10/15
duress [4]  28/13
28/22 29/4 29/12
during [2]  15/8
31/2
duties [1]  16/7

**E**

e-mail [1]  45/7
early [2]  42/19
46/16
easy [1]  5/1
ECF [3]  45/21 46/2
46/8
editions [1]  4/15
either [1]  5/4
election [1]  30/14
elects [1]  30/14
else [10]  22/5 23/1
25/12 28/7 37/12
39/5 42/10 44/10
44/13 46/14
emerging [1]  23/15
enable [1]  33/3
encourage [2]  26/7
34/12
ends [1]  43/13
engage [4]  27/9
32/20 32/21 35/8
engaged [1]  23/11
enough [2]  29/11
41/25
entail [1]  15/24
entails [1]  15/24
enter [2]  14/9
23/17
entering [2]  5/9
6/1
entertain [1]  15/3
entire [1]  31/14
entirely [1]  28/4
entitled [4]  23/20
42/17 43/12 47/5
entry [3]  6/5 6/14
6/17
equally [1]  23/17
ERIC [6]  1/6 2/3
2/22 13/23 14/1

28/3
essentially [3]
16/8 23/25 36/16
ethical [1]  17/7
EVE [29]  1/13 2/5
7/11 7/14 13/18
22/4 22/16 22/25
24/1 31/6 31/21
32/11 32/15 34/7
34/17 36/4 37/5
37/13 37/17 39/24
41/12 42/3 42/5
42/14 42/22 44/10
44/17 44/23 45/5
Eve's [1]  44/21
even [5]  3/13 9/15
21/2 21/16 43/6
events [2]  10/25
32/5
everybody [1]  41/17
everyone [2]  34/23
39/5
evidence [22]  13/12
17/2 18/23 18/24
18/25 19/1 19/3
19/4 19/10 21/5
22/9 22/11 22/19
27/24 27/25 31/21
33/19 40/23 43/11
43/20 43/21 43/25
evident [1]  27/16
exactly [5]  5/20
16/20 24/1 27/4
29/16
example [8]  13/3
14/12 16/24 19/13
22/24 23/7 23/17
32/4
exception [2]  23/4
43/14
exceptions [3]
22/20 22/22 40/10
exclude [3]  40/12
43/13 44/6
exclusions [1]  40/9
Excuse [1]  39/9
exercise [1]  2/8
exhibits [1]  17/4
expected [1]  13/10
expedite [1]  45/6
experience [1]  21/6
explained [1]  30/10
expression [1]
21/14
extensive [1]  32/6
extent [1]  24/3
extremely [1]  37/24
eyes [1]  5/1
eyewitness [1]
33/19

**F**

fact [5]  12/19 13/3
13/5 22/8 22/10
factual [1]  27/24
fair [2]  22/15 40/6
familiar [7]  18/23
19/21 20/23 20/24
21/2 22/10 23/22
family [7]  33/14

41/3 41/8 41/10
41/11 41/16 44/19
fan [1]  4/23
far [3]  18/19 20/15
20/20
Faretta [1]  30/11
fashion [1]  29/3
FBI [8]  11/7 11/12
11/16 33/18 33/21
35/6 41/23 44/18
federal [7]  19/9
19/21 20/1 20/2
22/10 43/25 43/25
feel [6]  24/11
25/10 28/6 33/13
40/22 40/25
feels [1]  13/2
felony [2]  11/1
11/3
few [2]  11/14 12/12
figure [1]  24/7
file [21]  10/24
18/4 18/7 18/8 18/9
18/12 33/24 34/19
34/20 42/13 42/18
42/19 43/10 44/24
44/25 45/2 45/11
45/13 45/23 46/7
46/15
filed [1]  18/5
filing [1]  37/1
film [1]  32/2
final [2]  6/16 28/8
find [8]  5/1 5/1
5/23 13/6 14/16
17/1 30/20 30/21
finding [1]  32/7
fine [11]  3/10 5/14
5/17 5/21 8/12 8/22
9/6 9/24 10/10 26/7
46/17
first [1]  2/15
fit [1]  15/23
flexibility [1]
43/6
flexible [1]  17/5
flight [1]  41/4
Floor [1]  1/17
fluid [1]  16/22
focus [1]  14/25
follow [2]  12/25
13/1
followed [6]  8/21
9/5 9/13 9/23 10/9
23/23
following [1]  5/8
follows [2]  8/12
46/10
fool [1]  21/15
Footage [1]  23/21
For the Defendant [1]
1/16
forced [1]  23/24
foregoing [1]  47/4
forgo [1]  30/9
forms [1]  29/16
forward [2]  34/24
35/23
found [8]  8/8 8/17
8/19 9/2 9/19 10/5

**F**

found... [2]   10/17
25/17
foundation [1]   25/8
foundational [1]
36/10
four [4]   6/7 7/15
9/15 10/6
FPD [1]   1/17
FPD-NY [1]   1/17
free [1]   39/6
Friday [1]   35/15
Fridays [1]   35/14
function [1]   16/4
fundamental [1]
22/2
further [6]   10/24
13/25 38/7 40/3
43/9 44/7
future [1]   25/5

**G**

generally [4]   2/25
3/2 25/3 32/5
GILSENAN [45]   1/16
2/5 2/10 2/11 2/16
7/11 7/14 7/14
12/18 12/21 13/17
13/22 14/15 14/17
15/6 15/18 16/2
16/12 16/13 17/4
17/16 17/25 18/7
18/18 24/17 24/18
24/21 24/25 25/5
25/12 26/2 26/8
28/7 30/25 31/10
32/23 34/8 36/21
37/15 39/11 44/15
44/22 44/25 45/12
45/18
Gilsenan's [3]
11/18 16/25 34/17
given [1]   27/23
gives [1]   43/6
giving [1]   25/24
good [1]   46/17
govern [1]   13/11
government [21]
1/13 2/4 7/20 8/3
10/23 11/1 11/2
16/24 19/3 31/10
31/15 32/3 32/6
32/18 32/23 34/19
34/22 35/22 42/7
43/20 44/3
grant [2]   29/1
46/11
granted [1]   46/1
great [2]   4/6 32/12
greater [3]   24/2
24/3 43/6
grounds [2]   5/10
6/2
guarantee [1]   32/3
guaranteed [1]
30/12
guarantees [1]   40/7
guess [5]   4/7 4/25
38/3 40/11 42/21

guilty [8]   8/8 8/17
8/20 9/2 9/20 10/6
10/18 25/17

**H**

hands [1]   16/12
happen [5]   7/13
14/5 14/6 14/7
43/22
happy [4]   15/3 16/5
17/18 42/19
hard [4]   21/16
23/12 41/23 45/7
harder [1]   21/18
harmed [2]   35/6
35/8
harmful [1]   23/2
harp [1]   7/23
hear [1]   29/11
heard [3]   21/13
39/13 40/6
hearing [3]   14/25
33/2 47/7
hearings [3]   35/14
36/9 37/9
hears [1]   23/2
hearsay [5]   19/14
19/18 22/12 22/22
23/5
help [5]   17/18
17/19 17/19 18/8
35/10
helpful [1]   32/10
Here's [1]   33/25
high [2]   9/24 33/15
higher [1]   11/4
highly [3]   25/11
25/11 41/22
himself [3]   2/8
21/14 45/22
hindered [1]   18/5
hindering [1]   41/24
home [2]   41/3 41/4
honest [1]   26/24
Honor [11]   22/7
26/6 31/9 32/16
35/11 37/19 38/8
39/19 39/25 41/19
43/1
HONORABLE [1]   1/10
HOOK [3]   1/22 47/3
47/14
hope [1]   28/24
hopefully [2]   43/18
45/25
hoping [1]   38/10
hour [1]   39/20
hours [1]   32/2
huh [3]   7/7 29/23
38/19
hundred [1]   3/24
hundreds [1]   32/2

**I**

identifies [1]
31/22
identify [1]   31/24
implications [1]
4/1
implies [1]   27/5

implying [1]   13/17
importance [1]
33/17
important [7]   2/14
3/14 3/14 17/14
17/15 33/14 41/2
impose [8]   8/9 8/11
8/16 8/22 9/3 9/6
9/21 10/7
imposed [1]   9/12
imprisonment [1]
9/14
in-person [8]   3/4
3/8 34/3 35/16
37/22 37/23 38/20
39/20
inadvertently [1]
14/13
include [1]   34/8
increased [1]   13/6
incredibly [1]
17/15
incriminating [2]
12/7 34/13
indeed [3]   3/20
4/24 15/9
independent [1]
11/17
indicate [1]   46/2
indicated [2]   10/22
22/8
indicating [1]
13/18
inform [1]   33/3
information [11]
6/20 7/3 8/4 14/24
32/1 32/13 32/14
37/2 37/2 38/3
44/22
informed [2]   26/5
26/10
initial [1]   13/17
initiates [1]   37/1
initiation [1]
36/19
inquire [1]   22/5
Inside [1]   23/21
instead [1]   39/15
intelligent [1]
30/15
intelligently [2]
30/9 30/23
intended [1]   32/18
intent [2]   11/16
11/16
intentionally [1]
14/14
interest [2]   33/22
44/7
interests [4]   43/15
43/16 43/17 44/8
interview [1]   31/23
interviewed [1]
11/8
into [7]   12/21
15/23 22/19 23/4
23/24 37/9 45/20
involve [1]   13/20
involved [4]   14/20
28/11 34/6 34/15

involving [1]   10/25
is not [1]   27/12
issue [5]   3/17 7/5
25/6 25/8 31/4
issues [2]   3/24
39/12

**J**

jail [1]   13/20
January [1]   10/25
January 6th [1]
10/25
JEFF [3]   1/22 47/3
47/14
job [1]   24/11
JOHN [4]   1/16 2/5
7/11 16/16
journalist [1]
11/17
judge [25]   1/11
2/19 5/12 5/12 6/22
11/17 13/15 15/13
16/5 18/2 18/3 24/1
24/20 25/14 26/22
27/18 33/12 33/17
36/4 37/4 38/16
44/20 45/17 45/19
46/9
jury [1]   42/23
justice [3]   35/10
43/14 43/16

**K**

kept [1]   33/14
key [1]   12/12
kind [2]   5/5 26/9
knowing [1]   29/8
knowingly [6]   25/23
30/2 30/4 30/9
30/15 30/23
knowledge [1]   22/2
Kristin [2]   38/6
39/18

**L**

lack [1]   25/19
large [2]   9/6 31/25
largely [1]   43/18
last [5]   2/7 2/24
24/19 33/5 44/17
latter [1]   6/17
law [12]   4/4 4/10
4/14 4/15 4/16
12/23 13/1 13/12
15/12 19/17 20/23
23/16
lawful [1]   41/4
lawyer [34]   11/25
12/5 13/2 13/2
13/10 15/13 20/15
20/18 20/20 21/3
21/11 21/14 21/17
21/18 24/12 24/13
24/14 24/25 25/1
25/5 25/9 25/21
25/25 26/15 26/19
26/20 28/16 28/18
29/1 29/7 29/10
29/18 29/20 30/7
lawyers [2]   12/22

**L**

lawyers... [1]
19/16
lay [1]   4/5
layout [1]   4/25
least [3]   11/12
18/11 34/14
leave [2]   46/1 46/7
left [1]   2/6
legal [8]   20/24
25/19 26/21 27/15
27/24 36/21 36/23
41/4
lengthy [1]   35/13
lesser [1]   13/19
light [7]   3/12 8/4
11/23 25/15 25/17
25/19 31/6
likely [2]   14/6
39/4
limit [1]   16/7
limitations [1]
47/9
limited [1]   37/25
line [2]   11/13
18/22
link [3]   38/4 38/5
40/4
live [1]   41/9
living [2]   23/16
26/17
local [4]   20/5
45/20 45/25 46/5
long [2]   39/19
41/25
longer [2]   31/3
31/3
look [3]   24/2 43/2
45/20
looking [2]   4/10
11/15
lot [9]   4/20 4/24
5/1 14/20 14/24
20/23 21/6 22/20
27/15
Luke [2]   23/23 24/2

**M**

mail [2]   45/4 45/7
makes [2]   12/12
22/6
making [4]   17/13
28/8 30/2 32/8
man [5]   26/16 26/17
28/3 28/22 35/7
manner [3]   2/12
6/25 27/8
many [8]   4/14 8/11
10/24 13/16 19/17
21/19 32/2 41/24
mass [1]   31/25
match [1]   6/18
material [2]   32/7
32/9
materials [1]   45/24
matter [6]   3/19
26/13 39/20 40/2
42/20 47/6
matters [6]   14/7

28/11 28/22 33/16
38/12 41/2
may [14]   12/9 13/1
13/8 13/9 21/5 23/3
27/12 28/25 32/13
32/13 34/19 37/4
41/6 46/16
maybe [4]   6/12 16/1
34/2 34/16
mean [11]   3/7 3/9
9/12 16/6 17/12
26/15 27/12 28/10
28/13 31/18 37/9
means [5]   22/24
27/7 27/8 27/13
31/19
member [3]   11/9
12/14 12/18
members [1]   25/6
men [1]   35/8
mentioned [1]   40/20
met [2]   31/15 35/10
mid [1]   35/13
might [11]   8/18
14/16 16/22 16/22
16/25 17/3 18/10
21/24 24/25 32/10
41/3
mind [3]   13/9 22/8
37/4
minimal [1]   13/20
minute [1]   5/23
minutes [1]   7/12
misdemeanor [6]   8/9
9/3 9/21 10/7 11/3
42/24
mistakes [2]   11/8
11/14
modify [1]   41/14
Mogelson [2]   23/23
24/2
months [6]   8/11
8/20 9/5 9/22 10/9
16/23
more [7]   6/22 6/23
10/18 22/11 27/21
31/12 32/5
MOSS [1]   1/10
most [5]   25/4 33/10
39/4 42/9 45/3
motion [9]   18/4
43/10 44/24 45/1
45/2 45/13 45/24
46/7 46/15
motions [10]   27/25
33/24 34/19 34/19
35/1 35/24 40/24
42/13 42/18 45/3
mountain [1]   43/20
moving [1]   45/8
Mr. [88]
Mr. Bochene [41]
2/7 2/12 2/13 2/16
2/23 3/15 3/16 4/4
5/3 13/24 16/6 16/8
16/11 20/14 22/5
22/9 22/12 23/5
25/13 25/15 28/24
30/5 30/20 31/18
31/21 31/24 32/9

32/22 32/22 33/7
33/23 35/3 37/21
38/9 38/18 39/7
40/6 43/22 43/24
44/13 45/21
Mr. Bochene's [2]
2/18 2/19
Mr. Gilsenan [42]
2/10 2/11 2/16 7/14
7/14 12/18 12/21
13/17 13/22 14/15
14/17 15/6 15/18
16/2 16/12 16/13
17/4 17/16 17/25
18/7 18/18 24/17
24/18 24/21 24/25
25/5 25/12 26/2
26/8 28/7 30/25
31/10 32/23 34/8
36/21 37/15 39/11
44/15 44/22 44/25
45/12 45/18
Mr. Gilsenan's [3]
11/18 16/25 34/17
Ms. [27]   7/11 7/14
22/4 22/16 22/25
24/1 31/6 31/21
32/11 32/15 34/7
34/17 36/4 37/5
37/13 37/17 39/24
41/12 42/3 42/5
42/14 42/22 44/10
44/17 44/21 44/23
45/5
Ms. Eve [26]   7/11
7/14 22/4 22/16
22/25 24/1 31/6
31/21 32/11 32/15
34/7 34/17 36/4
37/5 37/13 37/17
39/24 41/12 42/3
42/5 42/14 42/22
44/10 44/17 44/23
45/5
Ms. Eve's [1]   44/21
much [11]   8/12 8/20
8/22 9/4 9/22 10/8
11/4 12/13 12/14
13/15 21/18
must [5]   8/9 9/3
9/21 10/7 30/9
myself [10]   12/13
12/15 16/7 18/17
25/22 26/12 26/16
28/12 28/22 29/15

**N**

namely [1]   11/9
nature [1]   31/24
necessary [1]   27/9
need [17]   18/10
26/4 26/4 26/10
27/19 27/20 27/22
29/10 29/15 29/24
40/23 44/24 45/1
45/2 45/9 45/10
46/16
needed [1]   31/1
needs [3]   43/24
45/23 46/2

negotiations [3]
32/20 34/6 34/16
new [4]   3/1 4/12
4/19 23/21
next [4]   31/7 31/8
32/17 32/24
none [1]   35/22
notarized [1]   45/4
note [3]   11/12
15/21 47/7
notebook [1]   23/25
noted [4]   10/4
10/12 10/16 30/5
notes [1]   8/25
number [2]   3/23
13/16
NW [1]   1/24
NY [2]   1/17 1/18

**O**

object [1]   19/2
obligations [4]
15/22 17/8 31/15
42/8
obvious [1]   18/13
obviously [4]   3/7
3/14 12/24 45/5
occurred [1]   47/7
October [13]   35/13
35/15 35/18 35/20
37/17 39/16 39/22
40/3 40/12 41/2
43/13 44/6 46/14
October 22nd [2]
35/15 37/17
October 29th [6]
39/22 40/3 40/12
43/13 44/6 46/14
off [3]   2/6 11/2
21/11
offer [2]   17/19
26/9
office [1]   18/14
official [2]   1/23
47/3
once [2]   21/2 30/16
one [31]   4/6 4/24
5/8 5/23 5/25 6/16
6/23 8/8 9/9 9/14
10/18 10/19 11/9
11/20 11/24 13/19
14/12 20/19 22/15
22/21 22/22 23/7
23/18 24/8 33/25
35/5 35/11 36/20
38/5 39/4 42/21
ongoing [1]   44/5
online [1]   4/22
only [8]   4/25 5/6
17/12 18/25 19/7
22/7 28/12 36/18
open [3]   14/8 26/24
42/15
operate [1]   19/5
operative [1]   7/3
opponent [1]   22/23
opposed [1]   31/14
order [7]   8/13 8/22
9/24 10/10 30/8
46/1 46/5

**O**

orders [1]  13/11
ordinarily [1]
22/18
organized [1]  19/8
otherwise [2]  23/13
32/25
out [12]  4/5 18/19
19/8 19/10 20/25
21/1 24/7 25/9
32/13 34/1 35/14
42/10
out in [1]  4/5
outlined [1]  7/16
outside [3]  22/18
22/20 37/14
outweigh [2]  43/16
44/8
over [6]  4/11 8/14
19/18 27/2 33/14
39/20
overarching [1]
24/21
own [9]  15/12 20/12
26/15 28/9 28/19
29/1 29/9 29/20
30/7

**P**

p.m [5]  1/7 39/19
39/22 40/3 46/18
PA [2]  1/14 1/15
PACER [1]  45/21
page [1]  6/23
pandemic [2]  3/12
44/5
paper [1]  46/4
papers [1]  18/15
parading [3]  6/8
6/15 13/19
paragraph [1]  6/24
part [6]  2/25 6/17
6/18 25/4 33/15
36/11
participate [2]
16/10 38/23
particular [4]  16/7
24/14 31/22 43/18
particularly [1]
18/13
parties [2]  23/14
33/3
party [2]  22/14
22/23
past [2]  24/9 25/5
pause [1]  5/12
pay [6]  8/13 8/23
9/7 9/24 10/10
10/11
PDF [2]  5/13 19/8
penalties [2]  9/11
25/16
people [1]  24/9
per [1]  29/16
percent [1]  3/25
perform [2]  26/23
27/17
perhaps [5]  14/13
15/18 33/5 36/21

46/6
period [1]  8/21
permanently [1]
41/9
permit [2]  30/24
41/15
person [8]  3/4 3/8
34/3 35/16 37/22
37/23 38/20 39/20
personally [1]
31/24
perspective [3]
18/3 22/1 23/11
persuaded [1]  41/14
pertains [1]  22/13
Philadelphia [1]
1/15
phone's [1]  23/25
photographs [1]
31/23
pick [1]  27/10
picketing [2]  6/8
6/16
pitfalls [1]  14/20
Plaintiff [1]  1/4
play [2]  27/7 27/13
plea [5]  13/19
16/24 32/20 34/6
34/16
please [2]  8/15
47/7
point [13]  15/8
16/1 22/15 31/11
32/11 33/4 33/8
35/1 35/22 37/12
43/19 45/25 46/6
points [1]  26/4
pose [1]  37/4
position [1]  41/12
possession [1]  4/14
possibility [3]  8/1
8/3 11/5
possible [5]  10/23
32/9 41/14 42/1
42/10
possibly [1]  14/5
posture [1]  20/19
power [1]  44/18
practice [2]  21/6
35/1
practiced [1]  19/17
praise [1]  24/21
prefer [3]  3/3
13/24 39/5
preference [2]  3/17
39/7
prepared [5]  2/11
16/3 17/6 17/17
32/24
prerogative [1]
7/23
present [13]  17/12
18/17 25/5 25/22
27/20 27/24 27/25
27/25 28/21 28/25
29/4 29/12 29/14
presented [1]  45/11
presenting [4]
26/11 26/14 26/16
28/12

presidents [1]  4/7
presume [1]  38/24
pretrial [4]  36/12
36/14 41/13 41/15
pretty [1]  19/13
prevent [1]  29/17
previously [1]  3/23
primary [1]  25/8
printed [3]  19/8
19/10 20/25
printing [1]  21/1
prison [6]  8/11
8/12 8/21 9/5 9/23
10/9
private [1]  18/18
privately [1]  15/6
privilege [2]  14/16
14/18
pro [3]  29/15 29/16
31/3
probably [3]  18/20
21/13 45/12
problems [1]  5/2
procedurally [1]
18/12
procedure [5]  3/1
19/22 19/25 20/2
44/1
procedures [3]
20/25 26/24 46/3
proceed [15]  2/12
3/7 3/13 3/25 23/1
29/7 29/9 29/18
29/20 30/12 30/21
31/3 33/8 40/16
40/17
proceeded [1]  16/9
proceeding [7]  2/17
2/20 3/14 18/25
25/25 28/9 29/14
proceedings [10]
13/11 15/8 28/17
36/13 36/23 37/1
37/3 37/14 46/18
47/5
process [3]  32/7
34/8 35/2
projected [1]  14/6
promptly [1]  43/6
proper [1]  5/13
properly [1]  36/18
property [2]  35/9
44/18
proposal [2]  33/25
35/4
propose [5]  13/18
16/4 31/8 33/7
34/23
proposing [2]  35/19
43/10
prosecution [5]
6/13 14/19 23/12
31/14 41/3
prosecutor [4]
11/19 12/2 23/19
40/16
prove [1]  23/12
provide [4]  7/15
16/17 17/6 38/3
provided [4]  31/21

32/11 42/9 44/2
providing [2]  36/20
42/8
public [2]  43/17
44/8
publishes [1]  4/22
pull [3]  5/13 6/20
38/6
pulled [1]  5/15
purposes [5]  3/9
17/12 24/6 27/19
40/4
put [7]  27/9 29/15
33/10 34/1 40/2
42/4 43/8
putting [3]  17/9
17/16 29/5

**Q**

quite [5]  11/13
12/20 13/8 23/13
27/16

**R**

raise [3]  44/11
44/14 45/14
RANDOLPH [1]  1/10
reach [2]  9/15
18/22
read [5]  5/16 6/18
20/23 21/5 33/18
reading [1]  21/2
ready [1]  40/23
really [4]  11/25
21/2 24/11 36/17
reason [3]  23/8
28/12 33/20
reasons [1]  44/4
recall [1]  24/22
receive [5]  7/10
7/11 15/23 15/25
45/6
received [2]  21/25
36/17
receives [1]  20/18
record [7]  4/3 7/10
16/16 18/17 26/12
31/19 45/8
references [1]  4/18
referring [2]  4/21
6/23
regard [1]  22/9
rejecting [1]  26/3
relate [2]  15/4
43/21
related [2]  14/11
41/22
relates [1]  32/5
relating [2]  15/7
44/17
relationship [2]
24/13 24/17
relaxed [1]  20/10
release [8]  8/12
8/21 9/6 9/23 10/10
36/12 36/14 41/15
relevant [1]  42/11
remain [1]  12/6
remaining [2]  5/9
6/1

**R**

remotely [2]   47/5
47/9
repeat [1]   39/10
replace [1]   31/2
report [1]   23/22
reported [1]   47/5
Reporter [3]   1/22
1/23 47/3
reporter's [2]
23/20 23/25
reporting [1]   47/9
reports [1]   31/23
represent [17]   2/8
3/18 12/1 15/11
15/20 17/14 20/21
20/22 21/7 21/16
24/10 24/16 25/10
25/20 30/6 30/8
30/24
representation [1]
31/5
representations [2]
13/13 30/19
represented [7]   2/9
5/3 25/21 25/24
26/13 29/6 42/9
representing [16]
12/1 12/8 12/13
12/14 12/15 12/25
14/13 14/21 15/5
15/7 20/11 21/11
23/7 24/7 25/18
34/9
represents [1]
21/14
request [6]   15/22
17/7 29/2 45/24
46/7 46/11
required [3]   8/16
30/8 36/13
requirements [1]
30/21
researching [2]
4/11 11/10
resources [1]   37/24
respect [9]   11/7
15/14 21/4 31/5
31/13 31/15 32/20
44/4 45/10
respecting [1]   12/3
responsibilities [2]
28/1 28/2
restitution [5]
8/13 8/23 9/7 9/25
10/11
restricted [3]   5/9
6/1 6/4
results [1]   4/24
return [1]   32/25
returned [1]   42/1
review [7]   33/25
34/5 34/22 35/25
40/23 43/24 44/1
reviewed [1]   46/2
reviewing [1]   32/7
rife [1]   27/17
right [31]   2/8 6/24
9/10 10/1 12/6

14/24 18/16 18/20
19/2 23/23 24/6
25/2 25/20 25/21
25/24 26/5 26/11
26/18 29/5 29/6
29/8 29/9 30/6
30/12 31/21 37/25
40/8 42/23 46/3
46/4 46/13
rights [2]   4/13
27/23
riots [1]   31/14
risk [2]   12/9 41/4
risks [1]   14/20
risky [1]   23/8
role [2]   16/25 17/5
Room [1]   1/24
rule [8]   19/14
19/14 19/18 22/13
22/21 22/22 23/5
46/10
rules [28]   12/23
12/25 13/11 13/12
17/2 18/23 18/24
19/1 19/3 19/4 19/9
19/13 19/22 20/1
20/5 20/10 21/1
21/5 22/9 22/10
34/7 43/25 43/25
45/10 45/20 45/25
46/2 46/5
run [1]   12/9

**S**

same [9]   6/17 9/8
9/10 12/5 12/24
21/4 38/4 38/5 40/4
satisfied [3]   24/12
30/17 30/20
saw [1]   33/19
saying [9]   16/12
17/5 17/17 18/1
22/16 24/22 29/3
34/13 44/20
schedule [8]   33/1
34/2 34/4 34/18
34/23 34/24 35/1
35/23
scheduling [1]
39/11
se [2]   29/15 31/3
search [1]   4/24
second [1]   23/18
section [5]   5/10
6/2 6/4 6/7 6/9
sections [1]   6/24
seek [2]   16/8 46/3
seems [3]   18/5
23/13 33/21
self [3]   4/7 4/8
27/16
self-evident [1]
27/16
self-train [1]   4/8
self-trained [1]
4/7
send [1]   7/14
sense [4]   16/20
16/22 16/22 36/1
sent [2]   7/12 45/4

sentence [8]   8/10
8/18 8/18 8/20 9/4
9/22 10/8 10/19
sentences [1]   11/4
sentencing [3]
38/20 39/1 39/2
separate [2]   41/7
44/15
September [3]   1/6
33/6 41/1
serve [7]   16/3 28/9
28/16 28/18 28/18
30/7 30/25
served [1]   36/18
serves [1]   15/18
services [1]   41/13
serving [2]   16/4
36/16
set [6]   21/24 32/6
42/15 42/19 43/6
46/16
setting [5]   34/18
34/25 35/1 35/24
42/15
settling [1]   33/16
Shanghai [4]   33/11
41/4 41/9 41/16
shoes [1]   21/20
show [1]   18/14
side [1]   6/24
Siege [1]   23/21
significant [2]
11/25 21/15
silent [1]   12/6
simple [6]   33/10
36/3 36/6 36/7 36/7
44/16
simply [1]   20/11
single [1]   32/3
sit [1]   8/19
site [1]   4/22
situation [3]   14/16
23/15 44/19
six [3]   9/22 10/9
34/20
Sixth [1]   30/13
skilled [1]   21/17
skimming [1]   11/6
solely [1]   31/16
somebody [1]   12/24
sometime [2]   33/5
38/22
soon [2]   42/1 42/15
sorry [3]   5/15 26/1
39/25
sort [2]   15/22
16/21
sought [1]   19/3
sound [1]   29/19
sounds [2]   9/8
46/15
sourced [1]   6/12
sources [1]   4/17
special [5]   8/10
8/16 9/3 9/21 10/7
specific [2]   6/23
22/13
specifically [2]
22/11 23/14
specify [1]   16/20

speed [1]   44/1
speedy [5]   40/7
40/15 43/14 43/17
44/9
Square [1]   1/17
stand [4]   7/24
17/22 17/23 27/21
standard's [1]
30/17
standby [9]   1/17
2/13 15/18 15/24
16/3 16/6 18/19
26/3 30/25
standing [2]   12/13
12/15
start [2]   15/2
32/24
started [3]   7/12
11/2 11/11
starting [1]   35/13
state [4]   4/13 6/25
18/16 22/1
stated [4]   16/17
24/20 28/21 35/5
statement [5]   11/9
11/13 23/2 23/3
33/18
states [7]   1/1 1/3
1/11 2/3 4/12 4/13
11/16
status [8]   1/10
33/2 38/7 40/3 40/4
42/2 42/5 43/9
step [2]   16/14 33/1
steps [4]   27/9
27/13 31/7 32/17
stick [1]   38/10
sticking [1]   40/15
still [8]   3/17
19/17 25/19 32/12
37/25 41/23 42/10
43/19
strange [1]   33/22
Street [1]   1/14
strongly [1]   21/7
struggling [1]   17/1
studied [1]   4/4
stuff [2]   17/3
33/13
stumbling [2]   27/2
27/4
subject [2]   12/5
47/8
suffer [1]   25/16
suggest [3]   31/7
32/17 33/5
suggested [1]   2/10
summons [4]   36/8
36/17 36/18 37/8
supervised [5]   8/11
8/21 9/5 9/23 10/9
supplied [1]   31/10
supplying [1]   32/19
supporters [1]
23/23
suppose [1]   7/22
Supreme [2]   30/7
30/10
sure [15]   3/24 3/25
5/19 12/20 13/8

**S**

sure... [10]   14/23
29/16 31/18 34/12
36/3 37/12 39/6
40/6 42/16 43/11
suspect [1]   21/13
Syracuse [1]   1/18

**T**

talk [6]   2/10 34/22
36/21 42/14 44/25
45/12
talked [2]   14/4
35/6
talking [3]   41/8
41/9 41/10
technical [2]   19/13
19/14
technological [2]
41/23 47/9
technology [1]   46/4
teleconference [1]
38/1
term [4]   8/11 9/5
9/23 10/9
terms [7]   3/1 10/19
16/17 27/17 29/15
33/10 41/15
that I [1]   44/20
that's something [1]
17/11
therefore [2]   30/23
47/8
third [1]   6/13
though [6]   3/13
27/20 28/6 34/9
40/22 40/25
thought [2]   3/16
8/4
three [4]   6/5 9/15
9/20 16/23
times [1]   21/19
today [13]   2/17
2/20 3/9 3/10 3/13
8/19 16/22 17/13
27/20 30/20 42/9
44/11 44/14
today's [1]   15/8
together [1]   24/20
told [1]   23/5
traditional [1]   4/6
traffic [1]   5/6
train [1]   4/8
trained [6]   4/7
20/15 20/20 21/17
25/6 25/7
training [3]   20/18
20/24 25/19
transcript [2]   1/10
47/4
transparent [1]
26/23
trespassed [1]
33/13
trial [35]   3/7 3/7
3/8 16/9 16/10 17/1
31/2 34/25 35/13
35/24 40/7 40/8
40/16 40/17 40/19

40/23 40/25 40/25
42/6 42/6 42/11
42/14 42/15 42/16
42/18 42/19 42/23
42/23 43/5 43/10
43/14 43/17 43/23
44/9 46/16
tricky [1]   18/10
triggered [1]   36/24
trip [1]   19/17
trouble [1]   13/6
true [3]   12/24 21/4
47/4
Trump [1]   23/23
truth [1]   35/7
truthful [1]   13/12
try [1]   35/14
turn [2]   15/19 17/3
two [8]   4/11 6/3
6/24 9/2 9/14 28/20
29/10 33/12
typo [1]   6/12

**U**

U.S [3]   1/23 4/19
23/24
U.S.C [7]   5/10 5/24
6/2 6/4 6/7 6/9
6/13
Uh [2]   7/7 29/23
ultimately [1]
21/11
under [13]   4/18
7/24 19/3 23/4
28/12 28/22 29/2
29/4 29/12 30/10
34/7 41/16 43/13
understandable [1]
33/16
understands [1]
22/13
understood [1]   23/6
unequivocal [1]
30/22
unequivocally [1]
30/13
unfortunately [1]
38/13
UNITED [5]   1/1 1/3
1/11 2/3 4/13
unless [1]   15/17
up [24]   4/24 5/13
5/15 6/20 9/13 9/13
10/10 17/10 17/22
17/23 18/14 25/20
25/24 27/10 27/21
28/11 32/6 34/9
34/15 34/23 35/22
38/6 44/1 46/15
up and [1]   17/10
upon [1]   25/8
urge [1]   21/7
USAO [1]   1/14
USAO-PA [1]   1/14
use [9]   7/24 19/8
26/8 27/1 27/2
27/11 29/15 29/16
40/4
used [6]   12/4 12/10
22/14 34/14 36/8

37/7
uses [1]   27/16
using [3]   23/24
27/8 27/14
utmost [1]   33/17

**V**

vacation [1]   32/25
various [3]   4/12
4/19 40/9
verbal [1]   29/24
version [1]   20/2
video [13]   1/10 2/4
2/4 2/20 23/20 24/2
31/23 32/5 34/2
35/16 37/22 38/1
40/3
videoconference [3]
2/17 3/13 47/8
view [7]   2/18 20/15
20/20 24/24 28/1
28/2 41/3
viewed [2]   36/8
37/8
views [1]   24/17
violation [5]   5/10
6/2 6/4 6/6 6/9
violent [4]   6/5
6/14 6/17 33/20
visit [1]   41/16
visiting [2]   41/10
41/11
voluntarily [6]
25/23 28/12 30/3
30/4 30/14 30/23
voluntary [2]   28/4
29/8

**W**

wait [1]   45/7
waive [5]   14/15
14/18 29/9 40/17
46/3
wants [8]   16/6
32/21 33/2 34/20
38/18 38/18 40/16
44/3
warranted [1]   8/5
Washington [2]   1/5
1/25
way [9]   3/5 6/18
12/3 21/3 23/6
23/24 24/18 27/14
34/3
ways [2]   32/8 41/24
website [1]   20/6
week [2]   32/24 33/5
weeks [3]   13/16
13/16 34/20
weird [1]   3/1
welcome [4]   15/7
37/13 43/10 44/14
what's [1]   40/14
who's [4]   12/24
20/19 26/20 27/23
wife [1]   33/11
willing [6]   17/6
33/19 35/6 35/7
35/9 35/10
wise [2]   18/21

20/21
within [1]   40/8
without [2]   30/12
30/21
witness [2]   14/17
23/3
woman [1]   35/7
women [1]   35/9
word [7]   27/1 27/2
27/3 27/7 27/8
27/11 27/14
words [2]   21/25
21/25
work [3]   18/19
37/17 38/9
works [1]   4/11
write [1]   11/13
wrong [1]   23/6

**Y**

year [2]   9/13 9/13
years [2]   19/17
33/12
yes/no [1]   36/6
York [2]   4/12 4/19
Yorker [1]   23/21
YouTube [1]   23/20

**Z**

Zoom [5]   7/12 38/4
38/5 38/23 40/4